NORTHERN DISTRICT OF TEXAS
FILED

DEC 1 4 2021

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BEN E. KEITH, CO., <br> D/B/A BEN E. KEITH FOODS, | § <br> § <br> § | |
| Plaintiff, | § <br> § | |
| VS. | § <br> § | NO. 4:20-CV-133-A |
| DINING ALLIANCE, INC., | § <br> § | |
| Defendant. | § <br> § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration (1) the motion of plaintiff, Ben

E. Keith Co. d/b/a Ben E. Keith Foods, to dismiss all claims

asserted by defendant Buyers Edge Platform, LLC ("Buyers Edge"),

and the claims asserted by defendant Dining Alliance, LLC,

("DA"), in Counts III, IV, and V of its second amended

counterclaim, and (2) the motion of counterclaim defendant,

Foodbuy, LLC ("Foodbuy"), to dismiss all claims asserted by

Buyers Edge against it and the claims asserted by DA in Count II

for breach of the non-solicitation provision of the settlement

agreement between them, and in Counts III, IV, and V. The court,

having considered the motions, the responses, the replies, the

record, and applicable authorities, finds that the motions

should be granted in part.

I.

The Counterclaim

The operative affirmative pleading of defendants DA and
Buyers Edge is their second amended counterclaim filed October
15, 2021. Doc.[1] 90. In it, DA asserts a claim for breach of
contract against plaintiff (Count I), and a claim for breach of
contract against Foodbuy (Count II). DA and Buyers Edge assert
claims against plaintiff and Foodbuy for tortious interference
with contractual or advantageous business relations (Count III),
common law unfair competition (Count IV), and punitive damages
(Count V). DA also seeks to recover attorney's fees from
plaintiff (Count VI). DA and Buyers Edge also seek injunctive
relief.

Paraphrasing the description given in the court's March 12,
2021 memorandum opinion and order granting an earlier motion to
dismiss, and taking into account the amended pleadings, the
current allegations are:

DA operates a group purchasing organization for retail
dining and food service establishments, providing its members
the ability to purchase high quality supplies, inventory, and
equipment at significant savings by aggregating members'

---

[1] The "Doc. __" reference is to the number of the item on the docket in this
action.

2

purchasing requirements and leveraging those requirements to secure rebates and favorable pricing. Its clients apply to be members by submitting a letter of participation. They can terminate their membership by giving 90 days' written notice, referred to as a letter of termination ("LOT").

Plaintiff is a distributor of food, beverages, and related products and services. On May 13, 2013, plaintiff and DA entered into a purchase agreement pursuant to which DA's members could purchase goods and services from plaintiff and plaintiff's customers could become members of DA. The contract was for a term of five years, but would renew for consecutive one-year periods unless sooner terminated on 120-days' written notice. Thousands of restaurants enrolled as members of DA who also made purchases through plaintiff.

Starting in 2011, Foodbuy served as DA's rebate processor. Pursuant to a service agreement, Foodbuy was DA's exclusive agent for contracting with food manufacturers and suppliers for rebates and pricing on products for DA's members. Foodbuy received proof of purchase records through DA from its members and distributors like plaintiff. This reporting was required for Foodbuy to obtain rebates and special pricing. In August 2018, DA and Foodbuy entered into a confidential settlement and release agreement to wind down their relationship. Pursuant to

3

the agreement, if Foodbuy received a LOT by one of DA's members, it would provide written notice along with a copy of the LOT signed by the member to DA by overnight delivery or personal delivery and by email to DA's general counsel. If notice was not provided as required, Foodbuy could not invoice manufacturers for rebates using that member's purchase data.

Plaintiff gave notice to DA that the agreement between them would terminate August 31, 2018. Prior to that time, plaintiff requested, and DA provided, confidential information regarding its members. Such information was gathered in preparation to solicit DA's members to terminate their relationship with DA and to join a newly-created group purchasing organization, Unity Advantage Group, LLC ("UAG"), which also obtained rebates and special pricing, and of which plaintiff was a member and owner. Acting in concert with UAG and Foodbuy, plaintiff approached DA members and told them that (1) it would no longer provide reporting to DA; (2) DA had gone out of business and was "out" at plaintiff; (3) if the customer wanted access to deviated pricing and rebates, it must terminate its DA membership and sign up with UAG; and (4) if the member did not terminate DA, plaintiff would no longer deliver to that member.

Starting in September 2018, DA received emails attaching LOTS from its members. DA discovered that plaintiff had been

signing the LOTS and signing DA's members up as members of UAG, often without the members' knowledge. Many members were coerced by plaintiff to terminate their DA memberships under the false belief that rebates could not be secured through DA any longer and/or due to the threat that plaintiff would stop delivering to their restaurants. DA notified plaintiff that its membership terms required that it be provided the LOTs 90 days before termination would be effective.

Plaintiff and DA engaged in litigation, which settled in April 2019. The settlement agreement included limited releases for Foodbuy and UAG. It also provided that plaintiff would send certain member purchase data in exchange for which DA would pay a monthly administrative fee. Unbeknownst to DA, plaintiff began sending LOTs to UAG and/or Foodbuy instead of DA, thus enabling them to obtain rebates that belonged to DA. Plaintiff also failed to provide member purchase data as it was required to do.

II.

Grounds of the Motions

As set forth in the first paragraph above, plaintiff and Foodbuy maintain that defendants have not sufficiently pleaded their claims.[2]

---

[2] DA and Buyers Edge argue that Foodbuy should not be allowed to pursue a successive motion for failure to state a claim. Doc. 127 at 7-9. The law in the Fifth Circuit is otherwise. Doe v. Colombia-Brazoria Indep. Sch. Dist., 855 F.3d 681, 686 (5th Cir. 2017).

III.

Pertinent Legal Principles

The pertinent legal principles regarding pleading were set forth in the court's March 12, 2021 memorandum opinion and order and need not be repeated here.

Pertinent legal principles regarding choice of law are as follows:

Because the case is before the court on the basis of diversity of citizenship, the court applies the choice of law rules of Texas, the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Stuart v. Spademan, 772 F.2d 1185, 1195 (5th Cir. 1985).

Texas recognizes the "party autonomy rule" whereby parties to a contract can agree to be governed by the law of another state. Exxon Mobil Corp. v. Drennen, 452 S.W.3d 319, 324 (Tex. 2014). In that regard, it applies the Restatement (Second) of Conflict of Laws ("Restatement") § 187, which provides in pertinent part:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship
to the parties or the transaction and there is no
other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would
be contrary to a fundamental policy of a state which
has a materially greater interest than the chosen
state in the determination of the particular issue and
which, under the rule of § 188, would be the state of
applicable law in the absence of an effective choice
of law by the parties.

Id. at 324-25. Although "substantial relationship" is not

defined, Texas holds the parties to their choice when the state

of the chosen law has a sufficiently close relationship to the

parties and the contract as to make the parties' choice

reasonable. Id., 452 S.W.3d at 325. Unless the chosen law has no

substantial relationship with the parties or unless there is a

state with a materially greater interest in the dispute and

applying the chosen law would be against the fundamental policy

of the state with such materially greater interest, Texas will

enforce the choice of law provision. Bay Cities Recovery, Inc.

v. Digital Recognition Network, Inc., No. 4:18-CV-280-A, 2018 WL

4903233, at *3 (N.D. Tex. Oct. 5, 2018); Blue Racer Midstream,

LLC v. Kelchner, Inc., No. 3:16-CV-3296-K, 2018 WL 993781, at *4

(N.D. Tex. Feb. 21, 2018). The burden is on the party asserting

that the choice of law provision should not be enforced. Bay

Cities, 2018 WL 4903233, at *3.

If the chosen state has a substantial relationship to the parties and transaction, the court considers whether the exception of Restatement § 187(2)(b) applies. Exxon Mobil, 452 S.W.3d at 325. The first step of this analysis is to determine which state has the most significant relationship with the parties and their transaction. If that state is Texas, the court need not go further and the Texas choice of law provision will apply. Id. at 326-27.

The most significant relationship determination is made by examining which state's law would apply under the rule of Restatement § 188 in the absence of an effective choice of law provision. Section 188 refers to the principles of Restatement § 6 and says that the contacts to be taken into account in applying those principles are (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Thus, the court starts with the contacts and then evaluates them in light of the principles enumerated in section 6. Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc., 94 S.W.3d 163, 170-77 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

8

The Restatement § 6 principles are:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    (d) the protection of justified expectations,
    (e) the basic policies underlying the particular field of law,
    (f) certainty, predictability and uniformity of result, and
    (g) ease in the determination and application of the law to be applied.

As for conflicts cases sounding in tort, Texas applies the "most significant relationship" test as set forth in sections 6 and 145 of the Restatement. Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex. 1979). Section 145 is similar to section 188, stating that the contacts to be taken into account include:

    (a) the place where the injury occurred,
    (b) the place where the conduct causing the injury occurred,
    (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
    (d) the place where the relationship, if any, between the parties is centered.

9

IV.

Analysis

A.   Choice of Law

In response to the motions to dismiss, DA and Buyers Edge raise for the first time the contention that Massachusetts, rather than Texas, law should apply.[3] They have not pleaded any facts other than purported citizenship, however, to support the application of another state's law.[4]

Here, the settlement agreement between plaintiff and DA provides that Texas law will apply. Under the heading "Governing Law," the parties agreed:

> This Agreement is made and performable in Tarrant County, Texas, and shall be governed by, construed, interpreted, and enforced in accordance with the laws of the State of Texas, excluding any conflict-of-laws principles.

Doc. 142-1 at 7.[5] Texas has a substantial relationship to the parties, because plaintiff is a Texas citizen, having its principal place of business here. And, Texas has a strong interest in enforcing its residents' contracts. TransPerfect Translations, Inc. v. Leslie, 594 F. Supp. 2d 742, 751 (S.D.

---

[3] In response to an earlier motion to dismiss filed by Foodbuy, DA cited Texas law in arguing that it had stated a claim for tortious interference. Doc. 61 at 8-10. Likewise, DA relied on Texas law in opposing plaintiff's motion for preliminary injunction. Doc. 31.

[4] The court is considering whether the urging of this argument violates Rule 11 of the Federal Rules of Civil Procedure.

[5] The settlement agreement between DA and Foodbuy provides that it is governed by North Carolina law. Doc. 116 at 9, ¶ 13, but the parties have apparently abandoned any argument that North Carolina law applies.

10

Tex. 2009). That the parties' relationship is centered in Texas is apparent from all of the papers filed in the case and in the earlier litigation. *See* No. 4:18-CV-881-O. In each case, DA affirmatively asserted claims under Texas law. Doc. 90, ¶¶ 72, 74, 76; No. 4:18-CV-881-O, Doc. 16, ¶¶ 51, 53, 55. In addition, the court notes that the original contract between plaintiff and DA contained a choice of law provision stating that the agreement would be governed by Texas law. No. 4:18-CV-881-O, Doc. 16-2, ¶ 19. There is simply no reason to believe that any other state has a more significant relationship with the parties and transaction than Texas.[6] As the tort claims arise out of the alleged breach of contract, again Texas has the most significant relationship to the claims asserted.

B.   Breach of Non-solicitation Provision

Foodbuy contends that DA has failed to state a viable claim for breach of the non-solicitation provision in their settlement agreement. DA responds, and the court agrees, that DA has not asserted such a claim. Rather, DA alleges in the second amended counterclaim that Foodbuy has breached the settlement agreement by failing to comply with the provisions for notice of

---

[6] There are no pleadings to support any contention that significant activities related to the claims took place anywhere other than Texas.

terminations prior to invoicing manufacturers on DA's members' purchases. Doc. 90, ¶ 63.

C.    Tortious Interference

To state a claim for tortious interference with an existing contract, the plaintiff must allege: (1) the existence of a valid contract, (2) an act of interference that was willful and intentional, (3) the interference was a proximate cause of damages, and (4) actual damages or loss occurred. Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 402 (5th Cir. 2013); Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000). To state a claim for tortious interference with prospective contractual relations, the plaintiff must allege: (1) a reasonable probability that the parties would have entered into a contractual relationship, (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring, (3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or knew that the interference was certain or substantially certain to occur as a result of defendant's conduct, and (4) plaintiff suffered actual harm or damage as a result of the interference. Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 860 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

The second amended counterclaim does not allege facts sufficient to state claims for tortious interference with contract or prospective business relations of Buyers Edge. As for contractual relationships, counterclaimants point only to the conclusory allegation of ¶ 67 that they "enjoy advantageous business and/or contractual relationships with DA's members." Of course, one who is not a party to a contract cannot assert a claim for tortious interference. Baisden v. I'm Ready Prods., Inc., 693 F.3d 491, 509-10 (5th Cir. 2012). No facts are alleged to show that Buyers Edge had any contractual relationship with DA's members or any relationship with them that would have continued or new relationships that would have formed. That Buyers Edge is DA's purported parent company is irrelevant. See Jaffer v. Standard Chartered Bank, 301 F.R.D. 256, 262 (N.D. Tex. 2014); R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc., 578 S.W.3d 218, 229 (Tex. App.—El Paso 2019, no pet.). Because Buyers Edge has not pleaded a claim for tortious interference of any kind, neither does it have a claim for unfair competition. See Schoellkopf v. Pledger, 778 S.W.2d 897, 904-05 (Tex. App.—Dallas 1989, writ denied). And, without a claim for actual damages, Buyers Edge does not have a claim for punitive damages.

13

As for the claims asserted by DA against plaintiff and Foodbuy for tortious interference, DA has only alleged that they tortiously interfered with existing contracts (or relationships) with its members. It does not even address the grounds of the motions directed to tortious interference with prospective relations under Texas law. Doc. 128; Doc. 127.

The court is satisfied that the remaining claims have been sufficiently pleaded.

V.

Order

For the reasons discussed herein,

The court ORDERS that the motions to dismiss be, and are hereby, granted in part, and the claims (1) asserted by Buyers Edge against plaintiff and Foodbuy, and (2) asserted by DA for tortious interference with prospective business relations be, and are hereby, dismissed.

The court further ORDERS that the motions to dismiss be, and are hereby, otherwise denied.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the

14

dismissal of the claims asserted by Buyers Edge.

SIGNED December 14, 2021.

_____
JOHN MCBRYDE
Senior United States District Judge

15