**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BEN E. KEITH, CO. d/b/a/** | § | |
| **BEN E. KEITH FOODS,** | § | |
| | § | |
| **Plaintiff/Counterclaim Defendant** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00133-A** |
| | § | |
| **DINING ALLIANCE, LLC,** | § | |
| **BUYERS EDGE PLATFORM, LLC, and** | § | |
| **CONSOLIDATED CONCEPTS, LLC,** | § | |
| | § | |
| **Defendants/Counterclaim Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **FOODBUY, LLC,** | § | |
| | § | |
| **Counterclaim Defendant/** | § | |
| **Counterclaim Plaintiff** | § | |

**DINING ALLIANCE, LLC'S OPPOSITION TO FOODBUY, LLC'S
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)**

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND ............................................................................................................1

III.    ARGUMENT..................................................................................................................3

        A.      This Court Has Supplemental Jurisdiction Over DA's Claims ...............................3

        B.      Foodbuy's Standing Arguments Are Improper Under Fed. R. Civ. P.
                12(b)(1). ..............................................................................................................6

        C.      Foodbuy's Lost Profits Argument is Untimely.......................................................7

        D.      Foodbuy's Arguments Regarding Lost Profits Are Without Merit. ........................8

IV.     CONCLUSION..............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Acis Cap. Mgm't, L.P.*,
   604 B.R. 484 (N.D. Tex. 2019)..............................................................................................10

*In the Matter of Educators Gp. Health Trust*,
   25 F.3d 1281 (5th Cir. 1994) ..............................................................................................10

*Ensley v. Cody Resources, Inc.*,
   171 F.3d 315 (5th Cir. 1999) ..............................................................................................7, 8

*Jerry L. Starkey, TBDL, L.P. v. Graves*,
   448 S.W.3d 88 (Tex.App.-Houston 2014)..............................................................................11

*Lawrence v. Bailey*,
   C.A. No. 01-19-00799-CV, 2021 WL 2424935 (Tex. App.-Houston June 15, 2021) ..........6, 7

*Lawyers Title Ins. Corp. v. Stallion Funding, LLC*,
   No. 3:10-cv-0511-L, 2010 WL 4275278, at *8 (N.D. Tex. Oct. 29, 2010)...........................5, 6

*Lipshy v. Burk*,
   C.A. No. No. 05-19-00493-CV, 2020 WL 6696368 (Tex. App.-Dallas Nov. 12, 2020) ..........7

*Marshall v. MarOpCo, Inc.*,
   223 F.Supp.3d 562 (N.D. Tex. 2017) .....................................................................................4

*In re Neighbors Legacy Holdings, Inc.*,
   628 B.R. 600 (S.D. Tex. Bankr. 2021) ..................................................................................10

*Pike v. Texas EMC Management, LLC*,
   610 S.W.3d 763 (Tex. 2020)..........................................................................................6, 7, 8

*Siddiqui v. Fancy Bites LLC*,
   504 S.W.3d 349, 361-363 (Tex. App.-Houston 2016)............................................................11

*Sneed v. Webre*,
   465 S.W.3d 169 (Tex. 2015).........................................................................................10, 11

*State Nat'l. Ins. Co. v. Yates*,
   391 F.3d 577 (5th Cir. 2004) ..........................................................................................4, 5, 6

*Tex. Bd. of Chiropractic Examiners v. Tex. Med. Ass'n.*,
   616 S.W.3d 558 (Tex. 2021)..................................................................................................6

*Thomas v. N.A. Chase Manhattan*,
   994 F.2d 236, 241-42 (5th Cir. 1993) ....................................................................................11

*Tyler Refrigeration v. Inter-America Sales Co., Inc.*,
   C.A. No. 89-cv-2212, 1989 WL 120683 (E.D. La. Oct. 11, 1989) ..........................................4

*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966)...................................................................................................................4

*Wingate v. Hajdik*,
   795 S.W.2d 717 (Tex. 1990).............................................................................................10, 11

**Statutes**

18 U.S.C. § 1030...............................................................................................................................4

18 U.S.C. § 1836...............................................................................................................................4

28 U.S.C. § 1331...............................................................................................................................4

28 U.S.C. § 1367.......................................................................................................................3, 5, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)............................................................................................1, 4, 5, 6, 7, 11

Fed. R. Civ. P. 12(b)(6)...................................................................................................................1

Fed. R. Civ. P. 19............................................................................................................................5

Fed. R. Civ. P. 30(b)(6)..................................................................................................................9

Fed. R. Civ. P. 56............................................................................................................................7

## I.    INTRODUCTION

Counterclaim Defendant Foodbuy, LLC ("Foodbuy") seeks the dismissal of the counterclaims asserted by Dining Alliance, LLC ("DA") and Buyers Edge Platform, LLC ("Buyers Edge") under Fed. R. Civ. P. 12(b)(1) (lack of subject-matter jurisdiction).[1]   As set forth herein, Foodbuy's motion is without legal merit and should therefore be denied.   As this Court is aware, DA's counterclaims against Foodbuy looms.   Faced with this impending trial, Foodbuy has adopted a "see what sticks" approach to litigating, filing, within the span of two months, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),[2] a motion for summary judgment,[3] a motion to dismiss under Fed. R. Civ. P. 12(b)(1),[4] and a motion to designate a responsible third party.[5] Foodbuy's efforts to pass the buck to someone else have resulted in significant motion practice and have wasted (and will continue to waste) precious court resources.   Because this Court has supplemental jurisdiction to adjudicate DA's counterclaims notwithstanding lack of diversity between DA and Foodbuy, and because DA has suffered an injury-in-fact as a result of Foodbuy's conduct, Foodbuy's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) should be denied.

## II.    BACKGROUND

This Court is no doubt well-versed in the facts underlying the parties' dispute in the above-captioned matter.   DA will therefore focus on the specific facts relevant to Foodbuy's motion.

On February 17, 2020, Ben E. Keith Co. ("BEK") initiated this lawsuit against DA.   *See* ECF No. 1.   DA answered BEK's complaint on May 22, 2020, filing a counterclaim against BEK.

---

[1] On December 14, 2021, the Court dismissed Buyers Edge's counterclaims against Foodbuy and Ben E. Keith, Co.   ECF No. 177.   Accordingly, Foodbuy's motion is now moot to the extent it seeks dismissal of those claims.

[2] ECF No. 98.

[3] ECF No. 113.

[4] ECF No. 144.

[5] ECF No. 153.

*See* ECF No. 12. On October 13, 2020, BEK sought leave to amend its complaint to add two defendants: Buyers Edge Platform, LLC, "a Delaware limited liability company with its principal place of business in Massachusetts" ("Buyers Edge") and Consolidated Concepts, LLC ("CC"). *See* ECF No. 27-1. On November 10, 2020, DA sought leave to amend its counterclaims, seeking to join two counterclaim defendants, Foodbuy and Unity Advantage Group, LLC ("UAG"). *See* ECF No. 35. Both parties' requests were granted, *see* ECF No. 36, and summons issued as to Buyers Edge. *See* ECF No. 43.

DA, Buyers Edge, and CC filed their answer on December 9, 2020. *See* ECF No. 46.[6] On April 12, 2021, this Court issued a revised scheduling order setting a deadline for motions for summary judgment. *See* ECF No. 71 (requiring motions for summary judgment to be filed at least 75 days prior to the scheduled pretrial conference date). On October 7, 2021, the Court extended the summary judgment deadline to November 1, 2021. ECF No. 83. On October 13, 2021, DA and Buyers Edge sought leave to amend the counterclaim and add Buyers Edge as a counterclaim plaintiff. *See* ECF No. 84.[7] Foodbuy filed the instant motion to dismiss for lack of subject matter jurisdiction on November 29, 2021. *See* ECF Nos. 145-148.

_____

[6] In its answer, Buyers Edge admitted its principal place of business is in Massachusetts, but denied it was a Delaware LLC. As described in the accompanying Declaration of Adam L. Littman, Esq., this was an error made in good faith as a result of a misunderstanding regarding the state in which the existing Buyers Edge Platform, LLC was organized, as there was previously another entity named Buyers Edge Platform, LLC organized under the laws of the State of Florida ("Buyers Edge Florida"). Appendix in Support of DA's Opposition to Foodbuy's Motion to Dismiss, App. 0007-8, ¶¶ 2-4. In May 2019, Buyers Edge Florida converted to Buyers Edge Platform, Inc., ECF No. 146, Appx. 000004-05, and in June 2019, Buyers Edge Platform, Inc. converted to Buyers Edge Platform Opco, LLC. *Id.*, at Appx. 000011. There is no dispute that the "Buyers Edge" entity that is a party to this action is Buyers Edge Platform, LLC, a limited liability company organized under the laws of Delaware in April 2019.

[7] In the Second Amended Counterclaim, Buyers Edge was erroneously listed as a Florida LLC (rather than a Delaware LLC) for the reasons described in footnote 6. It is undisputed that, during the time period this action has been pending, only one "Buyers Edge Platform LLC" operated as a

After Foodbuy filed its motion, the Court ordered the parties to file documents establishing their citizenship, supported by declaration or affidavit. ECF No. 151. In response, BEK filed a statement supported by declaration identifying as a citizen of Texas (ECF No. 166) and Foodbuy filed a statement supported by affidavit identifying as a citizen of Delaware, North Carolina, and Georgia (ECF No. 181). DA, Buyers Edge, and CC filed a statement supported by declaration identifying as citizens of Delaware, Florida, New York, and the Channel Island of Jersey. ECF No. 181. The Court has ordered DA, Buyers Edge, and CC to file an amended response by December 23, 2021, providing all of the information required for the Court to determine the citizenship of each of them, including the principal place of business of the corporation members of Buyers Edge and the citizenship of each of the partners in the limited partnership members of Buyers Edge. ECF No. 182. As of the filing of this motion, DA, Buyers Edge, and CC are still investigating the citizenship of the limited partnership members of Buyers Edge and will timely file an amended response in compliance with the Court's order.

## III.   ARGUMENT

### A.   This Court Has Supplemental Jurisdiction Over DA's Claims

This Court has jurisdiction over DA's counterclaims regardless of the citizenship of each LLC's members under the doctrine of supplemental jurisdiction, and Foodbuy's motion should be rejected on that basis. "Federal courts have supplemental jurisdiction under 28 U.S.C. § 1367. It grants supplemental jurisdiction over other claims that do not independently come within the jurisdiction of the district court but form part of the same Article III case or controversy." *State Nat'l. Ins. Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004) (quotations and citations omitted); *see also Tyler Refrigeration v. Inter-America Sales Co., Inc.*, C.A. No. 89-cv-2212, 1989 WL 120683

---

going concern and it was organized under the laws of the State of Delaware. Appendix in Support of DA's Opposition to Foodbuy's Motion to Dismiss, App. 0007-8, ¶¶ 2-4.

(E.D. La. Oct. 11, 1989). The same "case or controversy" requirement is satisfied where claims "derive from a common nucleus of operative fact such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *See Marshall v. MarOpCo, Inc.*, 223 F.Supp.3d 562, 571 (N.D. Tex. 2017) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966) (quotations omitted)).

It is undisputed this Court has jurisdiction to adjudicate the original action between BEK, DA, Buyers Edge, and CC because BEK asserts causes of action under federal law, which implicate the Court's federal question jurisdiction.[8] *See* ECF No. 89, Second Amended Complaint, Count Three (Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836) and Count Five (Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030). *See also* 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). At issue here is whether a court can hear counterclaims filed by a defendant in a federal action against a non-diverse counterclaim defendant where those claims sound exclusively in state law. Because the Fifth Circuit has explicitly and definitively found that supplemental jurisdiction extends to such claims, Foodbuy's 12(b)(1) motion should be denied.

In *State National Insurance Company, Inc. v. Yates*, the Fifth Circuit was faced with an issue similar to the one presented here. There, an insurance company filed a diversity action against Yates, a policy holder. 391 F.3d at 578. The policy holder sought to join as third-party defendants certain non-diverse local defendants, then argued that the case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because the case lacked for complete diversity. *Id.* The Fifth

---

[8] As noted above, DA, Buyers Edge, and CC are still investigating the limited partnership members of Buyers Edge. Accordingly, DA does not rely on the existence of diversity jurisdiction for purposes of this opposition.

Circuit rejected Yates' argument, holding that "[a]lthough we have not directly addressed this issue in the past, today we hold that "plaintiff" in § 1367(b) refers to the original plaintiff in the action – not a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party-plaintiff." *Id.* at 580. Thus, because Yates' claims against the non-diverse third-party defendants arose from the same "case or controversy" as State National Insurance Company's claims against Yates, supplemental jurisdiction was appropriate under § 1367. *See id.* at 580-81.

A recent district court opinion out of the Northern District further illustrates the principle. In *Lawyers Title Ins. Corp. v. Stallion Funding, LLC*, this Court similarly found that joinder of non-diverse third-party defendants required to be joined pursuant to Rule 19 would not destroy the Court's subject matter jurisdiction. C.A. No. 3:10-cv-0511-L, 2010 WL 4275278, at *8 (N.D. Tex. Oct. 29, 2010). Citing to *Yates*, the Court noted the relevant questions for subject matter jurisdiction purposes was who sought to join the third party defendant and whether that entity would become another plaintiff to the proceedings. *See id.* Where, as here, the new parties would not be added by the original plaintiff to the proceedings and would not become plaintiffs themselves, joinder was permitted without damage to the Court's subject matter jurisdiction. *Id.*

No party disputes that this Court has subject matter jurisdiction to adjudicate BEK's original claims against DA, Buyers Edge, and CC, as well as DA's counterclaims against BEK.[9] It is also uncontested that BEK is not making any claims against Foodbuy. DA's claims therefore align perfectly with the fact patterns in *Yates* and *Stallion Funding*, and this Court can properly adjudicate, pursuant to 28 U.S.C. § 1367, DA's counterclaims against Foodbuy, which arise out

---

[9] BEK has filed a motion to dismiss DA's claims under Fed. R. Civ. P. 12(b)(1) on the grounds DA lacks Article III standing to assert the claims. ECF No. 157.

of a common nucleus of operative fact and form part of the same case or controversy as the claims in the original action between DA and BEK.

## **B.** **Foodbuy's Standing Arguments Are Improper Under Fed. R. Civ. P. 12(b)(1).**

Because Foodbuy's arguments about DA's standing to bring claims do not implicate the Court's subject matter jurisdiction, this Court should deny Foodbuy's motion to dismiss for lack of standing. Recent state and federal decisions interpreting Texas law make clear that the showing required to satisfy Article III standing is distinct from the showing to recover damages under state law claims. In *Pike v. Texas EMC Management, LLC*, 610 S.W.3d 763 (Tex. 2020), the Texas Supreme Court analyzed a similar challenge to the one arising here. There, a limited partner sought to recover damages arising from defendants' allegedly improper actions toward a partnership. *See id.* at 773-74. Defendants argued that because Plaintiff could not, under Texas law, recover damages on its claim, Plaintiff lacked standing and the court lacked subject matter jurisdiction to hear the case. *See id.* Noting that Texas courts "have drawn upon the standing doctrine of our federal counterparts, sometimes apply[ing]  the label 'standing' to statutory or prudential considerations that do not implicate subject-matter jurisdiction but determine whether a plaintiff falls within the class of persons authorized to sue or otherwise has a valid cause of action," *id.* (citations and quotations omitted), the Texas Supreme Court nevertheless concluded that "a plaintiff does not lack standing in its proper, jurisdictional sense simply because he cannot prevail on the merits of his claims; he lacks standing when his claim or injury is too slight for a court to afford redress." *Id.* at 774 (citations and quotations omitted); *see also Tex. Bd. of Chiropractic Examiners v. Tex. Med. Ass'n.*, 616 S.W.3d 558, 566 (Tex. 2021); *Lawrence v. Bailey*, C.A. No. 01-19-00799-CV, 2021 WL 2424935, at \*5 (Tex. App.-Houston June 15, 2021) ("Whether a plaintiff has established his right to go forward with his suit or satisfied the requisites of a particular statute pertains in reality to the right of the plaintiff to relief rather than to the subject matter

- 6 -

jurisdiction of the court to afford it" (quoting *Pike*, 610 S.W.3d at 777));  *Lipshy v. Burk*, C.A. No. No. 05-19-00493-CV, 2020 WL 6696368, at \*\*2-3 (Tex. App.-Dallas Nov. 12, 2020).   Parallel federal decisions are in accord with this position.  *See e.g. Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 319-20 (5th Cir. 1999) (interpreting Texas law).

The teachings of *Pike* and *Ensley* are simple:  a motion brought pursuant to 12(b)(1) cannot be predicated on whether a party has "established his right to go forward with his suit or satisfy the requirements of a particular statute."  *See Lawrence*, 2021 WL 2424935, at \*5.   Rather, a 12(b)(1) motion is properly targeted at a party's ability to meet its Article III standing requirements.  *See Ensley*, 171 F.3d at 319 (noting "[t]he irreducible minimum constitutional standing requirement to invoke a federal court's article III jurisdiction is (1) injury-in-fact; (2) fairly traceable to the defendant's action; and (3) likely to be redressed by a favorable decision" (citations omitted)).   DA clearly meets these requirements.   As discussed below, DA has suffered financial injury fairly traceable to Foodbuy's conduct.   Should DA prevail on its counterclaims, such success will redress the harm in the form of monetary damages.   DA therefore easily fulfills its Article III standing requirements.

## C.   Foodbuy's Lost Profits Argument is Untimely.

The deadline for filing motions for summary judgment in this matter was November 1, 2021. *See* ECF No. 83.[10]  Foodbuy attempts to circumvent this requirement in challenging DA's claim for lost profits under the guise that its motion is not a motion pursuant to Rule 56, but is instead brought under Rule 12(b)(1).   As discussed above, Foodbuy's factual attack on DA's entitlement to recover lost profits does not in any way implicate the Court's subject matter

---

[10] Indeed, Foodbuy filed a motion for summary judgment on November 1, 2021.  *See* ECF No. 113.

jurisdiction and, therefore, violates the spirit of this Court's summary judgment deadline and should be denied on that basis alone.[11]

### D.    Foodbuy's Arguments Regarding Lost Profits Are Without Merit.

To the extent this Court is inclined to look beyond *Pike* and *Ensley* and consider what amounts to a second summary judgment motion by Foodbuy, DA is nevertheless entitled to seek lost profits from Foodbuy.  Importantly, Foodbuy has successfully convinced the Court that DA, and not Buyers Edge, is the entity entitled to pursue tortious interference claims as DA held the contracts and relationships with the members that are the subject of the counterclaims in this case. The Court dismissed the counterclaims asserted by Buyers Edge.  *See* ECF No. 177.  In the instant motion, Foodbuy takes an entirely inconsistent position, now arguing that another Buyers Edge entity, Buyers Edge Platform Opco, LLC ("Buyers Edge Opco"), is nevertheless the only entity that can maintain a claim for lost profits.  Foodbuy cannot have it both ways.  Further, Foodbuy's argument is premised on a distorted recitation of the evidence and DA's operations.

As set forth in the Second Amended Counterclaim and extensive briefing before this Court, DA operates a group purchasing organization and has contractual and/or business relationships with its members.  ECF No. 139, Appx. 103, ¶¶ 4-6.  As a result of those relationships, DA generates substantial revenues through discounted pricing and rebates from food manufacturers with whom DA and its partners contract to serve DA's members.  ECF No. 139, Appx. 103, ¶ 4.[12]

---

[11] As noted, BEK has raised similar arguments in a motion filed on December 3, 2021.  ECF No. 157.  While DA will respond separately to that motion, it should be noted that BEK's motion raises similar arguments to those raised by Foodbuy, which fail for the same reasons articulated herein.

[12] On page 7 of its brief, citing to the testimony of Buyers Edge's CFO, John Rogers, Foodbuy misleadingly suggests Buyers Edge Opco is the sole entity that entered into the current third-party rebate-processing contract with Entegra.  Mr. Rogers testified that many of the Buyers Edge subsidiaries are parties to the rebate processing contracts that were the subject of his testimony. ECF No. 146, Appx. 66, at 26:3-26:124; Appx. 67, at 27:14-27:18.  Moreover, as DA's Rule 30(b)(6) witness testified, DA is also a party to the contract with Entegra, which is a rebate

DA's rebate processor receives rebate payments from manufacturers, issues payment to DA, and DA issues checks to its members for their portion of the rebate.  *Id.*

Starting in late 2018, DA underwent a corporate reorganization, which resulted in DA being a wholly-owned subsidiary of Buyers Edge.  ECF No. 139, App. 102, ¶ 2; Appendix in Support of DA's Opposition to Foodbuy's Motion to Dismiss, App. 0002-3, at 28:6-29:17.  DA's members continued to generate substantial revenues for the organization.  ECF No. 106, Report of Kimberley A. Train, App. 14, n. 16 and Exhibit 6.2, App. 32-33 (showing net revenue associated with DA members that purchased from BEK, exclusive of third-party rebate processing fees and member share).  Because Dining Alliance is now an operating subsidiary, sales are generated under DA and revenue is tracked separately for DA.  ECF No. 146, Appx. 61, at 21:4-21:12; *see also* ECF No. 148, Sappx. 2, at 38:16-38:20.  Profits from DA's operation are passed through to Buyers Edge, the sole member of DA.  *See* ECF No. 146, Appx. 62-63, at 22:23-23:8; *see also* ECF No. 148, at Sappx. 12-13, at 72:23-73:1.  Foodbuy's breach of contract[13] and tortious interference with DA's contractual and business relations resulted in the loss of thousands of DA members, thereby eliminating the revenue streams that had been generated as a result of those memberships and, thus, reducing the sales and revenue attributable to DA's business operation.  *See generally* ECF No. 140 (brief in support of opposition to Foodbuy motion for summary judgment) and ECF No. 106 (expert report).

Foodbuy's citations offer little support for its proposition that DA lacks standing to seek lost profits.  Under Texas law, "[a] claim for lost profits must be brought, directly or derivatively,

_____

processor for all of the entities within the Buyers Edge organization that require rebate processing.  Appendix in Support of DA's Opposition to Foodbuy's Motion to Dismiss, App. 000, 32:2-32:15.
[13] DA's contract with Foodbuy is governed by North Carolina law and DA seeks lost profits from Foodbuy under North Carolina law.  Notably, Foodbuy does not argue DA is not entitled to recover lost profits damages under North Carolina law.

- 9 -

by the entity suffering the loss of profits." *See e.g. In re Neighbors Legacy Holdings, Inc.*, 628 B.R. 600, 611 (S.D. Tex. Bankr. 2021). As described above, DA clearly satisfies that threshold requirement. The cases cited by Foodbuy do not alter that result. The cases instead focus on the concept of shareholder standing, fleshing out when and where a shareholder or stockholder can maintain a suit against a third party for harm to the corporate entity in which the shareholder or stockholder has an interest. *See e.g. id*. These cases are inapposite as DA's claim for lost profits are not predicated on an ownership interest in Buyers Edge or Buyers Edge Opco. Rather, Buyers Edge owns DA. Thus, the stockholder direct vs. derivative action paradigm does not depict DA's right to lost profits or support a finding that DA is not entitled to seek lost profits.

In fact, Foodbuy's citations actually help to illustrate the differences between the shareholder direct/derivative paradigm and the facts of this case. The three bankruptcy cases Foodbuy cites to examine which claims (if any) a third-party intervenor can raise when asserting claims on behalf of the bankruptcy estate. *See In the Matter of Educators Gp. Health Trust*, 25 F.3d 1281, 1285 (5th Cir. 1994) (distinguishing between causes of action belonging solely to the bankruptcy estate versus those in which movants had directly suffered harm and therefore had cognizable interest); *In re Acis Cap. Mgm't, L.P.*, 604 B.R. 484, 509-11 (N.D. Tex. 2019) (debtor's former equity owner lacked standing to appeal order for relief); *In re Neighbors Legacy Holdings, Inc.*, 628 B.R. at 611-12 (shareholder and contracting party seeking to sue). Unlike the movants in Foodbuy's cited bankruptcy cases, DA has suffered direct harm to its business.

Other cases cited by Foodbuy do little to alter the analysis. *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990), was largely overruled in 2015 by the Texas Supreme Court in *Sneed v. Webre*, 465 S.W.3d 169, 188 (Tex. 2015) (rejecting *Wingate* and noting that "if justice requires, a court may treat a derivative proceeding like a direct action and allow the shareholder to recover

- 10 -

directly"). *Thomas v. N.A. Chase Manhattan*, a Fifth Circuit case from 1993, was decided under New York, not Texas, law. 994 F.2d 236, 241-42 (5th Cir. 1993). And *Siddiqui v. Fancy Bites LLC* supports, rather than subverts, a finding of standing for DA in this case. In *Siddiqui*, the Texas Court of Appeals analyzed whether two co-managers and members of limited liability companies had standing to sue their co-managers and the co-managers' construction company for losses arising from alleged breaches of fiduciary duties, unjust enrichment, and fraud. *See* 504 S.W.3d 349, 361-363 (Tex. App.-Houston 2016). After agreeing in generic terms that individual stakeholders in a legal entity do not generally have a right to recover personally for harms done to the legal entity, *id.* at 360, the Court looked to the counterclaim plaintiffs' standing to assert their individual counterclaims, finding that the movants had standing to assert these individual claims because the evidence showed that had been harmed. *See id.* at 362 (citing *Jerry L. Starkey, TBDL, L.P. v. Graves*, 448 S.W.3d 88, 98-99 (Tex.App.-Houston 2014) (distinguishing plaintiff's individual claims from those belonging to partnership and stating that "the question of whether there is any evidence that Graves was injured is a question of sufficiency of the evidence, not a question of standing"). Because DA has been directly harmed by Foodbuy's actions, and because Foodbuy's case law support does not alter that analysis, this Court should deny Foodbuy's requested relief.

## IV.    CONCLUSION

For the reasons stated herein, DA respectfully requests that this Court deny Foodbuy's motion to dismiss DA's counterclaims pursuant to Fed. R. Civ. P. 12(b)(1).

Dated: December 20, 2021

Respectfully submitted,

*/s/ Rachel Ziolkowski Ullrich*
Rachel Ziolkowski Ullrich
Texas Bar No. 24003234
rullrich@fordharrison.com

**FORDHARRISON LLP**
1601 Elm Street, Suite 4450
Dallas, Texas 75201
Telephone: (214) 256-4700
Facsimile: (214) 256-4701

-and-

Joseph P. Crimmins, BBO # 556582
Joseph.crimmins@arentfox.com
Adam L. Littman, BBO # 673407
Adam.littman@arentfox.com

**ARENT FOX LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 973-6100
(admitted *pro hac vice*)

**ATTORNEYS FOR DINING
ALLIANCE, LLC**

**CERTIFICATE OF SERVICE**

I, Rachel Ziolkowski Ullrich, Esq., hereby certify that on this 20th day of December 2021, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

*/s/ Rachel Ziolkowski Ullrich*
Rachel Ziolkowski Ullrich

- 12 -