IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BEN E. KEITH, CO. d/b/a/ <br> BEN E. KEITH FOODS, <br><br> *Plaintiff/Counterclaim Defendant* <br><br> v. <br><br> DINING ALLIANCE, LLC, <br> BUYERS EDGE PLATFORM, LLC, and <br> CONSOLIDATED CONCEPTS, LLC, <br><br> *Defendants/Counterclaim Plaintiff/* <br> *Counterclaim Defendant* <br> v. <br><br> FOODBUY, LLC, <br><br> *Counterclaim Plaintiff/* <br> *Counterclaim Defendant* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Civil Action No. 4:20-cv-00133-A |

**FOODBUY, LLC'S SUBMISSION IN RESPONSE
TO THE COURT'S JANUARY 3, 2022 ORDER (DOC. 217)**

i

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................................... ii

Table of Authorities ............................................................................................................. iii

    I.     Introduction ................................................................................................................. 1

    II.    Relevant Procedural Background ........................................................................ 5

    III.   Analysis and Authorities ........................................................................................ 6

        A.    Relying on § 1653, Certain Caselaw Precludes a Substitution of a New Jurisdictional Basis as a Means to Remedy a Jurisdictional Defect............................................................. 7

        B.    While the Holdings in *16 Front* and Related Cases Are Inapposite to the Circumstances at Bar, They Suggest that the Court May Have Had Subject-Matter Jurisdiction as of November 25, 2020................................................................................................. 9

    IV.   Conclusion ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*16 Front St., L.L.C. v. Mississippi Silicon, L.L.C.*,
   886 F.3d 549 (5th Cir. 2018) ............................................................................... *passim*

*Aetna Cas. & Sur. Co. v. Hillman*,
   796 F.2d 770 (5th Cir. 1986) ..................................................................................7, 8, 11, 12

*Arena v. Graybar Electric Co.*,
   669 F.3d 214 (5th Cir. 2012) ...................................................................................11

*Bynane v. Bank of N.Y. Mellon for CWMBS*,
   866 F.3d 351 (5th Cir. 2017) ....................................................................................4

*Caterpillar, Inc. v. Lewis*,
   519 U.S. 61 (1996) ..........................................................................................10, 13–14

*ConnectU LLC v. Zuckerberg*,
   522 F.3d 82 (1st Cir. 2008) ..............................................................................10, 12–13

*Gillespie v. BAC Home Loans Servicing, LP*,
   No. 4:11–CV–388–A, 2013 WL 646383 (N.D. Tex. Feb. 21, 2014) .........................................5

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
   541 U.S. 567 (2004) ........................................................................................10–11

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
   283 F.3d 282 (5th Cir. 2002) ...................................................................................13

*Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc.*,
   2017 WL 436250 (D.N.J. Jan. 31, 2017) ..................................................................8, 11, 12–13

**Statutes**

28 U.S.C. § 1367(c)(3) ................................................................................................4–5

28 U.S.C. § 1653 ............................................................................................... *passim*

**TO THE HONORABLE JOHN H. MCBRYDE, UNITED STATES SENIOR DISTRICT JUDGE FOR THE NORTHERN DISTRICT OF TEXAS:**

Counterclaim Defendant Foodbuy, LLC ("Foodbuy") respectfully files this Submission in Response to the Court's January 3, 2022 Order (the "Submission") and would show as follows:

## I.  INTRODUCTION

Based on Counterclaim Plaintiff Dining Alliance, Inc./LLC's[1] failure to provide complete information concerning the citizenship of its members, it is unclear whether this Court has subject-matter jurisdiction. Diversity jurisdiction does not exist if DA, LLC has been the party to this case and has been a Texas citizen, by virtue of its recently identified upstream partners and members, since former Plaintiff Ben E. Keith ("BEK")[2] initiated this lawsuit in February 2020. Therefore, if diversity jurisdiction is the only basis for this Court's original jurisdiction, the Court does not have, and has not had, jurisdiction over this case.

However, the Court's January 3, 2022 Order ("Jan. 3rd Order") poses the question of whether federal-question jurisdiction may have become the Court's original jurisdiction under the reasoning of *16 Front St., L.L.C. v. Mississippi Silicon, L.L.C.*, 886 F.3d 549 (5th Cir. 2018) and similar cases. BEK, however, only alleged federal claims, thereby arguably invoking federal-question jurisdiction, in its First Amended Complaint ("FAC") (Doc. 42) on November 25, 2020, so federal-question jurisdiction naturally did not exist before then. The issues can therefore be summarized as follows:

- Did the FAC's invocation of federal-question jurisdiction retroactively "cure" the apparent lack of diversity jurisdiction from the case's inception?

---

[1] Given that it is still unclear which Dining Alliance entity, Dining Alliance, Inc. or Dining Alliance, LLC, was in the case at different times, and whether Dining Alliance, LLC has ever been a party, Foodbuy uses the following shorthand naming conventions: "DA, Inc." will refer to Dining Alliance, Inc.; "DA, LLC" will refer to Dining Alliance, LLC; and "DA" will refer to either or both DA, Inc. and DA, LLC, as may be applicable.

[2] BEK filed a Stipulation of Dismissal with DA, Buyers Edge Platform, LLC, and Consolidated Concepts, LLC on January 5, 2022 dismissing all claims asserted between BEK and these defendants. (Doc. 222). On January 6, 2022, the Court issued a partial final judgment as to these claims. (Doc. 225).

1

- If not, did the FAC's invocation of federal-question jurisdiction otherwise provide this Court with subject-matter jurisdiction as it stands now?

As Foodbuy explains below, the answer to the first question is likely "no," while, under the reasoning in *16 Front* and related caselaw, the answer to the second question may be "yes"—*but only as of BEK's filing of the FAC on November 25, 2020.*

In arriving at these answers, Foodbuy has examined two primary categories of caselaw. The first set of cases, which involve the application of 28 U.S.C. § 1653 (the rule governing "[a]mendment of pleadings to show jurisdiction"), explain that while defective jurisdictional allegations may be amended, amended pleadings cannot "cure" a prior lack of jurisdiction by providing a new jurisdictional basis that did not exist before the pleading was amended.[3] These cases can be described as the "incurable-by-jurisdictional-substitution cases" and, as applicable here, support the conclusion that the FAC's invocation of federal-question jurisdiction in November 2020 did not cure the apparent lack of subject-matter jurisdiction (i.e., the apparent lack of diversity jurisdiction) that existed before the FAC's filing.

The second category of cases include *16 Front*, along with many of the cases it cites, and generally can be described as the "time-of-filing-rule cases" because their holdings depend, at least in part, on the time-of-filing rule and its exceptions. But as explained below, the exceptions to the time-of-filing rule discussed in those cases are inapposite to the jurisdictional situation at bar because, at their core, those cases apply the exceptions based on the presence or absence of a certain party that impacts the court's jurisdiction. Those cases therefore do not stand for the proposition that the FAC's invocation of federal-question jurisdiction "cured" the lack of diversity

---

[3] The use of the term "cure" throughout the caselaw may be a matter of semantics, but Foodbuy interprets "cure" to mean *retroactively remedy* the jurisdictional defect. As explained in Part III, while Foodbuy does not believe that the potential lack of diversity jurisdiction could be cured, it believes federal-question jurisdiction potentially arose as of the filing of the FAC.

2

jurisdiction before November 2020. *However*, certain principles and reasonings within those time-of-filing-rule cases may provide the Court with a basis for a similar, but distinct, holding concerning its jurisdiction over this case: While jurisdiction did not exist before the FAC was filed and was not "cured" by its filing, **the FAC's pleading of federal claims vested this Court with jurisdiction starting on November 25, 2020.**

Unfortunately, and despite Foodbuy's desire to continue litigating in this Court and avoid wasting the parties' or Court's substantial investment of resources, Foodbuy acknowledges that, because of DA's conduct,[4] federal jurisprudence will likely not provide the Court a clear directive on whether it had or has jurisdiction. This consequence is particularly so since, to date, DA, LLC has not provided the Court with complete information regarding its citizenship. After two orders and opportunities to present the Court with complete information on its citizenship, DA, LLC's Amended Statement of Citizenship (Doc. 195) contains (at least) these shortcomings:

1. DA, LLC says nothing about when the upstream (natural person) limited partner who presumably is a Texas citizen obtained its partnership interest in a parent company of DA, LLC; rather, DA, LLC speaks of ownership only in the present tense, (*see generally* Docs. 195-1, 195-2), and DA, LLC should have provided that citizenship information over a year and a half ago, on *May 22, 2020*, when DA answered and appeared in this case.

2. Concerning the essential citizenship facts supposedly in DA, LLC's "control" and "knowledge," at the very least, DA, LLC has failed in two regards:

    a. It has failed to allege *citizenship* as to the natural-person employees who are limited partners in Bregal Sagemount II-B Feeder L.P. DA, LLC uses the term "reside," which, as the Court knows, is not the touchstone for citizenship because a natural person's "domicile" determines citizenship. (Doc. 195-2, ¶ 10);[5] and

---

[4] Foodbuy notes that in an April 9, 2021 motion filed by BEK and the defendants, DA included the following footnote: "Dining Alliance, LLC was named in the Complaint by its former name, Dining Alliance, Inc. The parties will file a stipulation to correct the name." (Doc. 69, at 1, n.1). This filing, made almost a *year* after DA answered and appeared, appears to be the first indication of the DA, Inc.-vs-DA, LLC issue. To the extent such a "stipulation" could have shed light on the issue now in front of the Court, DA never followed up on this matter and there is no such stipulation on file with the Court.

[5] While DA, LLC may suggest that this language was unintentional, and "residence" should be treated synonymously with "domicile," in light of DA, LLC's past "curious wording" regarding its citizenship *and this Court's express*

3

      b. It has failed to provide *any* citizenship facts related to the (unknown number of) trusts who are limited partners in Bregal Sagemount II-B Feeder L.P. (Doc. 195-2, ¶ 10). The trusts' citizenship is not necessarily identical to the citizenship of the employees (or employees' families) who benefit from the trust. *See Bynane v. Bank of N.Y. Mellon for CWMBS*, 866 F.3d 351, 357–59 (5th Cir. 2017) (explaining the considerations applicable for citizenship of trusts).

3. Regarding the necessary citizenship facts supposedly *outside* DA, LLC's "control" and "knowledge," it should not be lost that DA, LLC has failed to provide any citizenship information for *seven limited partnerships*. (Doc. 195-2, ¶¶ 9, 10). Lack of control over these entities, difficulty in obtaining the information, and "good-faith inquiries," however, are irrelevant to whether jurisdiction exists or not.

Even if these above defects had been remedied in DA, LLC's Amended Statement of Citizenship, and the full extent of the parties' citizenship was now known, the lengthy delay in providing these jurisdictional facts to the Court, Foodbuy, and BEK has resulted in a situation where some of the cases discussed below provide less guidance than they otherwise would. Much of the instructive caselaw, including *16 Front*, involved a jurisdictional issue being identified and addressed before the case extensively progressed. The limited delay between identifying a jurisdictional issue and attempting to remedy such issue in these cases was important, as it meant the courts exercised their power less at a time when their jurisdiction was in question.

In this case, DA's prolonged deceitful conduct has directly contributed to the complicated jurisdictional question at hand. Nevertheless, Foodbuy has done its best to answer the question (or questions) raised by the Court given the incomplete information DA has provided to date.[6]

---

*explanation that "citizenship for an individual is synonymous with the person's <u>domicile</u>,"* Foodbuy is hesitant to assume this deficiency was unintentional or harmless. (Doc. 182 (emphases added)).

[6] The claims between BEK and DA, Buyers Edge Platform, LLC, and Consolidated Concepts, LLC have now been dismissed. *See supra* note 2. If the Court determines it has supplemental jurisdiction over the claims against Foodbuy, which is DA's burden to prove, because BEK and DA were the original parties to this case, "all claims over which [the Court] has original jurisdiction" would have been dismissed, and there would be a question about whether the Court can or should exercise its supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). While, at first glance, the dismissal of BEK's federal claims may appear to moot the issue regarding whether the Court had or has federal-question jurisdiction, it does not. While the Court may have discretion to decline to exercise supplemental jurisdiction

## II.   RELEVANT PROCEDURAL BACKGROUND[7]

On February 17, 2020, BEK initiated this case by filing its Original Complaint. (Doc. 1). It named only *DA, Inc.* as a defendant, asserted only state-law claims, and pleaded subject-matter jurisdiction only on the basis of diversity jurisdiction. (Id., ¶ 3).

On May 22, 2020, *DA, Inc.* (only, according to the pleading) answered the Original Complaint. (Doc. 12). It affirmatively stated that "[DA, Inc.] is a Massachusetts *corporation* with a principal place of business [in Massachusetts]." (Id. at 7, ¶ 1 (emphasis added)). DA made no mention of its prior conversion from a corporation to a limited liability company.

On October 13, 2020, BEK filed its Motion for Leave to Amend Complaint and Join New Parties, to which BEK appended its proposed FAC that contained federal claims. (Docs. 27, 27-1).[8] The proposed FAC also pleaded federal-question jurisdiction. (Doc. 27-1, ¶ 5).

On November 12, 2020, the Court granted BEK's Motion for Leave to Amend Complaint and Join New Parties (Doc. 36), and on November 25, 2020, BEK's proposed FAC became its FAC—meaning federal claims and federal-question jurisdiction were then pleaded (Doc. 42).

Because this Submission addresses the Court's question regarding whether the FAC's invocation of federal-question jurisdiction provided and provides the Court with jurisdiction, the relevant timeframe for the analysis is February 2020 – November 2020. That said, as the Court is

---

over the claims involving Foodbuy under § 1367(c)(3), this Court has previously explained it would be an abuse of discretion to refuse to exercise supplemental jurisdiction "after investing a significant amount of judicial resources." *Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11–CV–388–A, 2013 WL 646383, at *4 (N.D. Tex. Feb. 21, 2014) (McBryde, J.) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods.*, 554 F.3d 595, 602–03 (5th Cir. 2009)) (finding that procedural facts near identical to those in the instant case required the Court to exercise supplemental jurisdiction). Thus, whether the Court had and has original jurisdiction has not been mooted by the recent dismissal of claims.

[7] Foodbuy and BEK have previously provided the Court with a comprehensive procedural background explaining their confusion concerning DA's citizenship throughout this case. (*See* Docs. 203, 220). Foodbuy therefore limits its discussion here to the events directly relevant to its analysis below.

[8] While BEK sought and obtained leave to sue Buyers Edge Platform, LLC and Consolidated Concepts, LLC, and later sued them, the presence of those now-dismissed parties is irrelevant to Foodbuy's analysis here since DA, LLC's citizenship has (potentially) prevented complete diversity and DA (whether DA, LLC or DA, Inc.) has been a party from the beginning.

aware, it was only on *December 23, 2021* that DA, LLC made a (partial) disclosure about its citizenship. (Doc. 195). That disclosure has put the Court's jurisdiction into question.

Given this procedural background, the jurisdictional issue confronting the Court can be synthesized as follows: (1) BEK pleaded diversity in its Original Complaint; (2) diversity jurisdiction may not have existed since the beginning of this case on February 17, 2020—at least based on DA, LLC's current (partial) disclosure regarding its citizenship; (3) after obtaining the Court's leave to amend, BEK pleaded federal-question jurisdiction in its FAC on November 25, 2020; and (4) the Court and parties must now determine whether the FAC's federal-question jurisdiction provided and provides the Court with jurisdiction. Thus, this case potentially involves a "substitution" of subject-matter jurisdiction—from potentially deficient diversity jurisdiction at the time of filing to federal-question jurisdiction in the FAC. Significantly, this type of "substitution" contrasts with many of the cases discussed below, which involved a "substitution" or "change" to the *parties* but involved the same jurisdictional basis throughout the life of the case.

### III.  ANALYSIS AND AUTHORITIES

There are two different camps of caselaw relevant to Foodbuy's analysis. Foodbuy first analyzes the cases it has coined the "incurable-by-jurisdictional-substitution cases," which, analyzed in a vacuum, suggest that this Court has never had jurisdiction.[9] Foodbuy then analyzes *16 Front* and other "time-of-filing-rule cases" and explains that, while the exceptions to the time-of-filing rule are inapplicable to this case, the rationale for those cases suggests that the FAC's invocation of federal-question jurisdiction *may* have provided this Court with jurisdiction beginning on November 25, 2020.

---

[9] Again, this reasoning assumes that if DA, LLC provided complete citizenship information, that information would <u>not</u> show that diversity jurisdiction existed between the time BEK filed suit against DA in February 2020 and the FAC's filing in November 2020.

6

A.  **Relying on § 1653, Certain Caselaw Precludes a Substitution of a New Jurisdictional Basis as a Means to Remedy a Jurisdictional Defect.**

In its recent Submission in Response to the Court's Order No. 107 ("Foodbuy's December Submission" (Doc. 203)), Foodbuy briefly discussed some of the caselaw it categorizes here as the incurable-by-jurisdictional-substitution cases. Those cases rely, to some extent, on a narrow reading of § 1653, which provides in its entirety that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. The Fifth Circuit has clearly explained the limited scope of this statute: "Section 1653 provides a method for curing defective *allegations* of jurisdiction. It is not to be used to create jurisdiction retroactively where it did not previously exist." *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986).

In *Aetna*, the Fifth Circuit confronted a situation where Aetna (the sole, original plaintiff) was a citizen of the same state as one of the defendants. *Id.* at 773. When Aetna realized the lack of complete diversity, it attempted to amend its complaint to substitute a different, diverse plaintiff in place of itself. *Id.* Recognizing the distinction from the precedent that allowed plaintiffs to amend to drop a nondiverse party "to preserve and perfect diversity jurisdiction,"[10] the Fifth Circuit reasoned Aetna's attempted substitution by amending the complaint did not cure the jurisdictional defect because "once Aetna withdrew from the lawsuit there was no longer a suit, as there was no longer any plaintiff, and replacing the plaintiff with [a diverse plaintiff] necessarily created a new lawsuit." *Id.* at 774. Because there was no jurisdiction when Aetna was the sole plaintiff, and because the amended complaint attempted to omit Aetna from the case, the district court never had jurisdiction over the original case; it could only have jurisdiction over a "new lawsuit" involving the completely diverse parties. *See id.* at 774–75.

---

[10] The analysis in Part III.B of this Submission demonstrates the importance of this distinction.

7

*Aetna*'s rationale supports the conclusion that BEK did not "cure" any jurisdictional defect (i.e., the lack of complete diversity) by pleading federal-question jurisdiction—even though BEK would have been unaware of any such defect as of November 2020 because DA had not informed BEK (or the Court) of the purported conversion to DA, LLC[11] and, therefore, would have had no intention to cure it. If BEK and DA were not completely diverse when the case was filed in February 2020,[12] jurisdiction did not in fact exist. Thus, whether pursuant to § 1653 or otherwise, BEK was effectively, albeit unknowingly, amending "to create jurisdiction retroactively where it did not previously exist"—the practice the Fifth Circuit held impermissible in *Aetna*. *Id.* at 775.

*Multicultural Radio Broadcasting, Inc. v. Korean Radio Broadcasting, Inc.*, 2017 WL 436250 (D.N.J. Jan. 31, 2017), which Foodbuy discussed in its December Submission, cites *Aetna*. *Id.* at *4. And *Multicultural Radio*'s procedural posture most closely resembles this case.[13] (*See* Foodbuy's December Submission (Doc. 203), at 13–14). Therefore, this incurable-by-jurisdictional-substitution caselaw stands for the proposition that BEK's FAC did not "*cure*" the (potential) lack of jurisdiction dating back to February 2020; however, as explained below, the caselaw analyzed in this subpart does <u>not</u> necessarily preclude the Court from determining that it has had subject-matter jurisdiction over this case since the FAC's filing on November 25, 2020.

---

[11] *See supra* note 4 (explaining that the footnote in the April 9, 2021 filing was the first allusion to this issue).
[12] Again, it is unclear when a Texas citizen became an upstream owner of DA, LLC.
[13] An important procedural-posture distinction from *Multicultural Radio* is that the district court there did not grant leave to amend the complaint to include the federal claim—primarily because the jurisdictional issue was identified by the parties before the filing of a motion for leave to amend the complaint. *Multicultural Radio*, 2017 WL 436250, at *1–*2, *5. Foodbuy addresses the significance of this distinction below.

8

**B.  While the Holdings in *16 Front* and Related Cases Are Inapposite to the Circumstances at Bar, They Suggest that the Court May Have Had Subject-Matter Jurisdiction as of November 25, 2020.**

    ***1.  The Time-of-Filing Rule's Exceptions Are Inapposite Here Because They Rely on Changes Involving the Jurisdiction-Defeating Parties in the Case, Which the FAC Did Not Effectuate.***

*16 Front* and the many cases cited and discussed within it can be generally categorized as time-of-filing-rule cases. The time-of-filing rule essentially states that a district court's jurisdiction depends on the state of facts when the case is initiated, and post-filing events do not divest the district court's jurisdiction. *16 Front*, 886 F.3d at 554–55. But as *16 Front* discusses, this rule has various exceptions for when post-filing events can "cure" a jurisdictional defect that existed at the time of filing. *See id.* at 555–57. *16 Front* provides an example of an exception to the general time-of-filing rule in the specific context of federal-question jurisdiction.

In *16 Front*, the Fifth Circuit addressed a situation where a plaintiff brought a federal claim against an improper defendant under the applicable federal statute. *Id.* at 554. The district court dismissed the claim against that defendant for lack of subject-matter jurisdiction, and the Fifth Circuit affirmed the dismissal as to that defendant. *Id.* at 553–54. Prior to the dismissal order, however, the plaintiff amended the complaint and added a second, proper defendant. *Id.* at 552.[14] While there was no dispute that the second defendant was a proper defendant, the district court dismissed the case in its entirety, reasoning that, under the time-of-filing rule, no jurisdiction existed as to the proper defendant under the amended complaint. *Id.* at 554. The Fifth Circuit disagreed and reversed the district court's decision on this issue. *Id.* at 560–61.

The Fifth Circuit ultimately held that the time-of-filing rule should apply in *removal* cases to prevent plaintiffs from repleading after removal in an effort to divest the district court of

---

[14] While the Fifth Circuit does not specify whether the amendment was made as a matter of right, there is no mention of the plaintiff seeking leave from the district court to amend.

9

jurisdiction; however, "in cases initially brought by a plaintiff in federal court, the time-of-filing rule is not dispositive." *Id.* at 558. The Fifth Circuit did <u>not</u> hold that post-filing amendments to a complaint can retroactively cure *any* defect as to jurisdiction. Rather, it emphasized that post-filing amendments resulting in *changes to the parties to the case* may cure jurisdictional defects. *See id.* at 556–57 (acknowledging two Supreme Court cases distinguished on the basis of whether jurisdiction had been cured because, "at the time of trial, there had been *a change in parties*" (emphasis in original)). For example, an amended pleading's post-filing changes to the parties may cure a jurisdictional defect in diversity cases—e.g., by dismissing a non-diverse defendant. *See id.* at 556 (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996)). Similarly, in *16 Front*'s federal-question context, the Fifth Circuit reasoned that "[a]llowing a suit against a new party to proceed is not an attempt to cure the jurisdictional defect that existed at the time of filing *as to the initial defendant*" because "there was a change in parties [i.e., the defendants] after the initial complaint was filed." *Id.* at 557 (emphasis added). *16 Front*'s discussion and reasoning thus centered on changes to the parties in the case.[15]

Unlike *16 Front*, BEK's FAC did not drop or substitute a defendant. To the extent DA, LLC's citizenship prevented complete diversity as of February 17, 2020, it divested this Court of diversity jurisdiction throughout the life of this case. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569, 575 (2004) (explaining how at time of filing defendant was a Mexican corporation and plaintiff was a partnership with two Mexican citizens, so there was incomplete

---

[15] As BEK notes in its Submission in Response to the Court's Order No. 217 (Doc. 220 at 7–8), the Fifth Circuit quotes and cites *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008). *16 Front*, 886 F.3d at 557. But Foodbuy does not put much stock in *ConnectU* for the proposition that, under the circumstances at bar, the FAC cured the apparent jurisdictional defect. The Fifth Circuit cited *ConnectU* as support for the proposition that the time-of-filing rule would not bar "switch[ing] jurisdictional horses before any jurisdictional issue has been raised." *Id.* (quoting *ConnectU*, 522 F.3d at 92). It did not reason that *any* jurisdictional issue might be "cured" by an amended pleading. Also, as discussed below, an important and distinguishing procedural fact in *ConnectU* was that the plaintiff amended its pleading *as a matter of right* and did not have to request leave to amend. *ConnectU*, 522 F.3d at 95–96.

10

diversity, and the fact that the two Mexican citizens exited the plaintiff partnership a month before trial did not cure the jurisdictional defect because "[t]he purported cure arose not from a change in the parties to the action, but from a change in the citizenship of a continuing party [i.e., the partnership]"). Thus, the specific holding of *16 Front*, which was premised on the amended complaint's addition of a new defendant, does not support the conclusion that the FAC retroactively cured a jurisdictional defect that may have existed from this case's inception.

It therefore seems unlikely that BEK's FAC could have "cured" any defect in diversity jurisdiction that existed when BEK filed this case for two reasons. First, the FAC cannot fairly be characterized as a valid exercise of a right under § 1653 to amend, as § 1653 "is not to be used to create jurisdiction retroactively where it did not previously exist." *Aetna*, 796 F.2d at 775. Federal-question jurisdiction cannot exist prior to pleading a federal claim. *Multicultural Radio*, 2017 WL 436250, at *5 ("Under the well-pleaded complaint rule, a court has federal question jurisdiction under Section 1331 when the 'face of the plaintiff's properly pleaded complaint' presents a federal question." (quoting *Abulkhair v. Liberty Mut. Ins. Co.*, 441 F. App'x. 927, 930 (3d Cir. 2011))).[16] Because the FAC was the first pleading to include a federal claim, jurisdiction could not be "cured" prior to November 25, 2020. Second, BEK and DA were the original parties and remained parties through the FAC, so there were no changes in parties for purposes of "curing" jurisdictional defects, in line with the holdings in *16 Front* and similar cases.

---

[16] This aspect of federal-question jurisdiction is not necessarily true of diversity jurisdiction. *See 16 Front*, 886 F.3d at 560 (discussing *Arena v. Graybar Electric Co.*, 669 F.3d 214, 224–25 (5th Cir. 2012), and how the Fifth Circuit "remanded for a factual determination of whether the plaintiff could establish that there had been diversity jurisdiction from the outset of the suit" when originally pleaded federal-question jurisdiction was found to be lacking).

11

### 2. *Despite the Fact that the FAC Likely Did Not "Cure" the Apparent Jurisdictional Defect, this Court May Have Jurisdiction as of November 25, 2020.*

The theory by which Foodbuy believes this Court might still determine it has subject-matter jurisdiction depends on a subtle, but important, nuance: While the FAC likely could not cure the apparent pre-existing jurisdictional defect, its filing may have created jurisdiction anew on November 25, 2020. Specifically, because the FAC's federal claims and invocation of federal-question jurisdiction would serve as a legitimate basis of jurisdiction to support a separate case altogether, the FAC created a jurisdictional basis for the case *only from that time forward*. This new, separate-case theory garners some support from the Fifth Circuit caselaw discussed above. *16 Front*, 886 F.3d at 554 ("It is undisputed that [the plaintiff's] claims against [the proper defendant] arise under the laws of the United States and that if they had been brought in a separate suit, the federal district court would have subject matter jurisdiction."); *Aetna*, 796 F.2d at 774 ("The case at bar also can be characterized as a new lawsuit.").

Not surprisingly, however, there is one considerable obstacle to this theory: If the Court did not and could not have had jurisdiction before November 25, 2020, then the Court arguably did not have jurisdiction when it granted leave for BEK to file the FAC on November 12, 2020. Certain cases would suggest that this presents an irreconcilable Catch-22: This Court can only obtain jurisdiction over this case by virtue of the new jurisdictional basis pleaded in the FAC, but, for that jurisdiction to vest, the Court had to exercise its power (or jurisdiction) to grant BEK leave to file the FAC. *See Multicultural Radio*, 2017 WL 436250, at *6 ("[A] court which lacks jurisdiction over an action from the outset lacks the authority to entertain a motion for leave to amend that would add a cause of action."); *see also ConnectU*, 522 F.3d at 95–96 (holding that

plaintiff could remedy a jurisdictional defect because it filed an amended complaint *as a matter of right*, but suggesting a different outcome had the plaintiff required leave to amend).[17]

But this potential Catch-22 may not be the death knell as to whether this Court has jurisdiction for two potential reasons. *First*, as the *Multicultural Radio* court acknowledges, "federal courts are empowered to undertake certain actions even if they lack subject matter jurisdiction." *Multicultural Radio*, 2017 WL 436250, at *6. The district court in *Multicultural Radio* reasoned that granting a motion for leave to amend a pleading is not one of those "certain actions," however, because granting leave requires a futility analysis that, in its eyes, is a "merits determination[]." *Id.* But that conclusion may not resonate in the Fifth Circuit because of its strong bias favoring the granting of motions for leave to amend pleadings. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). In fact, because a Fifth Circuit "district court must have a 'substantial reason' to *deny* a request for leave to amend," it is unclear why the granting of a motion for leave would necessarily invoke a district court's jurisdiction more than a denial of a motion for leave. *Id.* (emphasis added).[18]

*Second*, there is an argument under *16 Front* that DA's decision not to disclose its purported conversion, along with its withholding of critical citizenship information, in the timeframe between BEK's initiation of the lawsuit and the FAC's filing may have produced a situation that allowed this Court to obtain jurisdiction through the FAC's filing. In discussing the Supreme Court's *Caterpillar* opinion, the Fifth Circuit explained "that at the time the suit was removed from state court to federal court" there was no diversity jurisdiction and "the district court . . . clearly

---

[17] Foodbuy of course acknowledges that neither *Multicultural Radio* nor *ConnectU* are controlling as to this Court, and that both these cases predated *16 Front*.

[18] Further, *Multicultural Radio*'s reasoning for why the futility analysis would invoke a district court's jurisdiction rested primarily on a citation to a Southern District of New York district court opinion. *Multicultural Radio*, 2017 WL 436250, at *6.

13

erred in denying the motion to remand." *16 Front*, 886 F.3d at 555. "But, as the suit progressed in federal court, the non-diverse party was dismissed after a settlement was reached between that party and the plaintiff" prior to trial and judgment. *Id.* "The Supreme Court held that the federal district court had subject matter jurisdiction to try the case and render judgment." *Id.* But the Fifth Circuit did not explicitly discuss how the district court in *Caterpillar* presumably presided over the case (i.e., issued orders and granted relief) before the settlement that cured the jurisdictional defect. Thus, *Caterpillar* suggests that the judgment was not somehow invalidated for lack of jurisdiction simply because there was a period of time in the life of the case where jurisdiction was lacking—even if the trial and judgment necessarily resulted, on some level, from orders and relief granted by the district court before the settlement that dismissed the non-diverse party.

This reading of *Caterpillar* would support a similar outcome here. That is, this Court may not have had jurisdiction to grant BEK leave to file its FAC but, nevertheless, the FAC's filing created jurisdiction anew on November 25, 2020, which has existed since that date. The irony of such an outcome would be apparent. Transparency and candor with the Court and BEK concerning DA's true entity form and citizenship from the beginning of this case might have resulted in a dismissal for lack of jurisdiction before BEK filed its FAC. In other words, DA's withholding of that information may have breathed life into jurisdiction that otherwise would have perished. Further, an early dismissal for lack of jurisdiction may have prompted BEK to file (in 2020) a new case with federal claims, thus invoking federal-question jurisdiction. But in all likelihood, if BEK had known about the absence of diversity jurisdiction, it would have chosen to pursue non-federal claims against DA, LLC in state district court, as it did in its previous lawsuit against DA, Inc.

Foodbuy readily acknowledges its *Caterpillar*-based theory of jurisdiction may have holes. Namely, the more the Court exercised power over the case before November 25, 2020 (i.e., without

14

jurisdiction), the stronger the argument is that but for the Court's unknowingly erroneous exercise of jurisdiction in that timeframe, the FAC would not have been filed and this Court's potential federal-question jurisdiction as of November 25, 2020 would not even be an issue to examine.

### IV.   CONCLUSION

In conclusion, while Foodbuy prefers a result whereby the Court retains jurisdiction over this case and the substantial resources invested by the parties and Court are not wasted, Foodbuy acknowledges that the caselaw and this Submission do not provide the Court a clear, easy answer concerning whether it had and has jurisdiction over this case. To the extent the waters are still muddy, that is less a consequence of the caselaw than it is a consequence of DA having withheld critical information concerning its actual entity form and DA, LLC's citizenship.

Dated: January 7, 2022  Respectfully submitted,

By: _____
**WILLIAM S. SNYDER**
Texas Bar No. 00786250
wsnyder@bradley.com
**STACY D. SIMON**
Texas Bar No. 00788413
ssimon@bradley.com
**BRIAN M. GILLETT**
Texas Bar No. 24069785
bgillett@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
(214) 257-9800 (Telephone)
(214) 939-8787 (Facsimile)

**C. BAILEY KING, JR.**
North Carolina Bar No. 34043
*Admitted Pro Hac Vice*
cbailey@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
214 N. Tryon Street, Suite 3700
Charlotte, Texas 28202
(704) 338-6000 (Telephone)
(704) 332-8858 (Facsimile)

**ATTORNEYS FOR COUNTERCLAIM DEFENDANT FOODBUY, LLC**

## CERTIFICATE OF SERVICE

On this 7th day of January 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

_____
William S. Snyder

16