IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **BEN E. KEITH, CO. d/b/a/** | § | |
| **BEN E. KEITH FOODS,** | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant* | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00133-A |
| | § | |
| **DINING ALLIANCE, LLC,** | § | |
| **BUYERS EDGE PLATFORM, LLC, and** | § | |
| **CONSOLIDATED CONCEPTS, LLC,** | § | |
| | § | |
| *Defendants/Counterclaim Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | |
| **FOODBUY, LLC,** | § | |
| | § | |
| *Counterclaim Defendant/* | § | |
| *Counterclaim Plaintiff* | § | |

**DINING ALLIANCE LLC, BUYERS EDGE PLATFORM, LLC, AND CONSOLIDATED CONCEPTS, LLC AND THEIR COUNSEL'S RESPONSE TO THE COURT'S <u>DECEMBER 30, 2021 ORDER</u>**

AFDOCS/25151977.2

## **TABLE OF CONTENTS**

BACKGROUND .................................................................................................................. 1

      A.      Dining Alliance, Inc. Converted to Dining Alliance, LLC Before this Action Was Filed. ..................................................................................... 1

      B.      The DA Attorneys Attempt to Identify and Correct the Misnomer. ........................ 3

      C.      The DA Attorneys Did Not "Obstruct" Foodbuy's Efforts to Take Jurisdictional Discovery............................................................................. 6

      D.      The DA Attorneys Worked With the DA Parties and Bregal Investments to Ascertain the DA Parties' Citizenship In Compliance with the Court's Orders........................................................................................................ 10

      E.      The DA Attorneys' Conduct Does Not Warrant Revocation Of Their Pro Hac Vice Admissions or the Striking of the DA Parties' Pleadings. ..................... 12

CONCLUSION.................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andrews v. Lakeshore Rehabilitation Hosp.*,
   140 F.3d 1405 (11th Cir. 1998) ...................................................................................5

*Atlas Trading Conglomerate Inc. v. AT&T Inc.*,
   C.A. No. 3:15-cv-0404-K, 2018 WL 1122158 (N.D. Tex. Feb. 28, 2018) .............................13

*Belue v. Leventhal*,
   640 F.3d 567 (4th Cir. 2011) .....................................................................................12

*Brooks v. Motsenbocker Advanced Developments, Inc.*,
   C.A. No. 07CV0773-MMA (NLS), 2009 WL 10671895 (S.D. Cal. Mar. 2, 2009)................13

*Johnson v. Trueblood*,
   629 F.2d 302 (3d Cir. 1980).......................................................................................12

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*,
   2004 WL 833595 (N.D. Tex. 2004)..............................................................................5

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980)..................................................................................................12

*Ryan v. Astra Tech, Inc.*,
   772 F.3d 50 (1st Cir. 2014).......................................................................................13

*In re Sealed Appellant*,
   194 F.3d 666 (5th Cir. 1999) ...............................................................................12, 13

*In re Silverman*,
   855 Fed. Appx. 912 (5th Cir. 2021)...........................................................................12

*Stolfat v. Equifax Information Services, LLC*,
   C.A. No. 19-80428-CV, 2019 WL 2708855 (S.D. Fla. June 25, 2019) ................13

*Trade Well Intern. v. United Cent. Bank*,
   778 F.3d 620 (7th Cir. 2015) ...............................................................................12, 13

*U.S. v. Brown*,
   72 F.3d 25 (5th Cir. 1995) .......................................................................................12

*U.S. v. Collins*,
   920 F.2d 619 (10th Cir. 1990) ..................................................................................12

AFDOCS/25151977.2

*U.S. v. Howell*,
    936 F. Supp. 774 (D. Kan. 1996) .......................................................................................... 13

*U.S. v. Nolen*,
    472 F.3d 362 (5th Cir. 2006) ............................................................................................... 12

**Statutes**

Mass. Gen. Laws Ann. ch. 156D, § 9.55 ....................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 4

Fed. R. Civ. P. 25(c) ...................................................................................................................... 5

Fed. R. Civ. P. 26(a)(1) .................................................................................................................. 3

Fed. R. Civ. P. 30(b)(6) .................................................................................................................. 7

AFDOCS/25151977.2

Dining Alliance, LLC, Buyers Edge Platform, LLC, and Consolidated Concepts, LLC (collectively, the "DA Parties") and their counsel submit this response to the Court's order dated December 30, 2021, regarding the Court's concern as to the conduct of counsel admitted *pro hac vice* from the law firm Arent Fox, LLP, Joseph P. Crimmins, Esq. ("Attorney Crimmins"), Adam L. Littman, Esq. ("Attorney Littman"), and Benjamin M. Greene, Esq. ("Attorney Greene")[1] (the "DA Attorneys").

As set forth below, the DA Parties state that although certain mistakes were made by the DA Attorneys, none of the mistakes were made intentionally or in bad faith or in violation of any ethical rules, and neither the revocation of the DA Attorneys' *pro hac vice* admissions nor the striking of the DA Parties' pleadings is warranted. In short, the entity BEK sued had been converted from a Massachusetts corporation to a Massachusetts limited liability company between settlement of the first lawsuit between that entity and BEK and the commencement of this case. However, the DA Attorneys did not know that fact until well after they filed the original answer on behalf of the originally-named corporation. The DA Attorneys disclosed the new LLC once they became aware of its existence.

## BACKGROUND

### A. Dining Alliance, Inc. Converted to Dining Alliance, LLC Before this Action Was Filed.

On February 17, 2020, BEK initiated the above-captioned lawsuit by filing a complaint against Dining Alliance, Inc. ("DA, Inc.") based, in part, on an April 2019 settlement agreement, which identified DA, Inc. as a party to that agreement. ECF No. 1, ¶¶ 2, 12; *see* ECF No. 108

---

[1] Attorney Greene did not begin working on this matter until October 2020. To the extent this brief refers to the DA Attorneys' conduct before October 2020, the reference is to the conduct of Attorneys Crimmins and Littman.

1

(App. 009). The settlement agreement arose of out of a previous litigation between BEK and DA, Inc. in the Northern District of Texas. *See generally* C.A. No. 4:18-cv-00881-O.

In fact, between the execution of the settlement agreement and the commencement of this litigation, DA, Inc., a Massachusetts corporation, converted to Dining Alliance, LLC ("DA, LLC"), a Massachusetts limited liability company. See App. 0076, Articles of Entity Conversion.

Pursuant to Mass. Gen. Laws Ann. ch. 156D, § 9.55, the effect of entity conversion is as follows:

> (a) When a conversion under this subdivision in which the surviving entity is a domestic business corporation or domestic other entity becomes effective: . . .
>
> (2) the liabilities of the converting entity remain the liabilities of the surviving entity;
>
> (3) an action or proceeding pending against the converting entity continues against the surviving entity as if the conversion had not occurred; . . .
>
> (7) the surviving entity is considered to: . . ,
>
> (ii) be the same corporation or other entity without interruption as the converting entity that existed prior to the conversion; . . .

According to the statutory comments:

> When the surviving entity is a domestic business corporation or a domestic other entity, the surviving entity has the same status as if it had been originally incorporated or organized under the laws of the commonwealth. Thus, the surviving entity will have all of the powers, privileges and rights granted to that type of entity originally incorporated or organized in the commonwealth and will be subject to all of the duties, liabilities and limitations imposed on that type of entity. . . .
>
> An entity conversion is not a conveyance, transfer or assignment.

Mass. Gen. Laws Ann. ch. 156D, § 9.55 (comment).

Although Attorney Crimmins and Attorney Littman represented DA, Inc. in the first litigation with BEK, they did not know that DA, Inc. had been converted to DA, LLC until a

2

number of months after this litigation started.  App. 0002, Declaration of Adam L. Littman ("Littman Dec."), ¶¶ 3, 5-6; App. 0044-46, Declaration of Joseph P. Crimmins ("Crimmins Dec."), ¶¶ 2-6.  Arent Fox does not handle the DA Parties' corporate work and it did not handle the entity conversion or any of the corporate restructuring of the DA Parties' business that occurred before the beginning of this action.  App. 0045, Crimmins Dec. ¶ 3.

In May 2020, the DA Attorneys assisted with preparing and filing an Answer and Counterclaim, which was filed on behalf of DA, Inc. by the DA Attorneys in good faith, believing that DA, Inc. was still the name of the relevant party.  App. 0002, Littman Dec. ¶¶ 3-4; App. 0044-45, Crimmins Dec. ¶¶ 2-4.  On June 24, 2020, Attorneys Crimmins and Littman filed *pro hac vice* applications on behalf of DA, Inc.  ECF Nos. 20; 21.

In June 2020, the DA Attorneys worked with the DA Parties to prepare a certificate of interested persons, which was filed on June 2, 2020 on behalf of DA, Inc.  ECF No. 14.  The certificate named Buyers Edge Platform, LLC ("Buyers Edge") as the name of the parent corporation.  *Id.*  The certificate also named Buyers Edge and DA, LLC as legal entities financially interested in the outcome of the case.  *Id.*  The DA Attorneys were not aware at that time that DA, Inc. had become DA, LLC.  App. 0002, Littman Dec. ¶¶ 3, 4-6; App. 0044-46, Crimmins Dec. ¶¶ 2-6.

B.  **The DA Attorneys Attempt to Identify and Correct the Misnomer**.

On July 24, 2020, the DA Attorneys served Rule 26(a)(1) disclosures by email on counsel of record for BEK.  App. 0007.  In preparing the disclosures, the DA Attorneys learned that DA, Inc. was not the correct name of the entity and that the entity had become DA, LLC.  App. 0002, Littman Dec. ¶ 6; App. 0046, Crimmins Dec. ¶ 6.  The initial disclosures therefore were served on behalf of DA, LLC with the correct entity name in the heading, body, and signature block of the document.  App. 0007.

3

The DA Attorneys informed counsel for BEK of the name change in various ways and submitted pleadings and discovery in the name of DA, LLC to reflect that DA, LLC, rather than DA, Inc., was the proper name of the party in the case. App. 0003-04, Littman Dec. ¶¶ 8-15. Attorney Littman informed counsel for BEK of the name change from DA, Inc. to DA, LLC on a number of occasions. App. 0003-04, Littman Dec. ¶¶ 8-11. In September 2020, when the parties were negotiating the terms of a proposed preliminary injunction sought by BEK, Attorney Littman exchanged drafts of a proposed injunction in which Attorney Littman corrected the name of DA, Inc. to DA, LLC and BEK's counsel accepted that change. App. 0003, Littman Dec. ¶ 8.

In December 2020, Attorney Littman worked with BEK's counsel to prepare a Confidentiality Agreement governing the production, disclosure, and use of documents, testimony, and other information in the action. *Id.* at ¶ 9; Exhibit D. The Confidentiality Agreement was entered into between BEK, DA, LLC, Buyers Edge Platform, LLC, and Consolidated Concepts, LLC. DA, Inc. was not listed as a party. *Id.* BEK's counsel approved and signed the Confidentiality Agreement on behalf of BEK. *Id.*

In April 2021, Attorney Littman worked with BEK's counsel to prepare and file a joint motion by BEK and DA, LLC in support of a motion by Foodbuy, LLC ("Foodbuy") to continue the trial date and modify the scheduling order. ECF No. 69; App. 0003, Littman Dec. ¶ 10. This occurred after the joinder of Foodbuy and the Court's denial, in part, of Foodbuy's motion to dismiss under Fed. R. Civ. P. 12(b)(6). Before filing, Attorney Littman emailed a copy of the motion to counsel for Foodbuy, who responded that Foodbuy did not oppose the motion. App. 0003, Littman Dec. ¶ 10.

In the joint motion, ECF No. 69, there was a footnote after DA, LLC's name in the introductory paragraph stating, "Dining Alliance, LLC was named in the Complaint by its former

4

name, Dining Alliance, Inc. The parties will file a stipulation to correct the name." ECF No. 69. Unfortunately, the stipulation was never prepared or filed and neither BEK's counsel or the DA Attorneys presented the Court with a motion to correct the misnomer to make clear DA, LLC was the proper name of the party in the case. App. 0004, Littman Dec. ¶ 11.[2]

On two occasions, DA, LLC sought and obtained leave to file an amended counterclaim. On November 10, 2020, DA, LLC filed a motion to amend and join Foodbuy and Unity Advantage Group, LLC as counterclaim defendants. ECF No. 35. The proposed amended counterclaim, which was attached to the motion, alleged "Counterclaim Plaintiff, Dining Alliance, LLC, is a Massachusetts limited liability company with a principal place of business at 307 Waverley Oaks Road, Suite 401, Waltham, MA 02452." ECF No. 35-2, ¶ 1.

When DA, LLC filed its Answer to the First Amended Complaint and Amended Counterclaim, DA, Inc., instead of DA, LLC, was mistakenly identified in Paragraph 1 of the Amended Counterclaim. ECF No. 46. This was a drafting oversight resulting from using as a template the original Answer and Counterclaim naming and filed on behalf of DA, Inc. App. 0004, Littman Dec. ¶ 14; App. 46, Crimmins Dec. ¶ 10.

On December 16, 2020, Foodbuy's counsel executed a Waiver of Service of Summons acknowledging receipt of DA, LLC's request to waive service of a summons. ECF No. 50.

---

[2] DA, LLC was not required to file a motion for substitution because such a motion is only appropriate when there has been a change in interest after the start (not before) of the litigation. *Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1407 (11th Cir. 1998) ("[A]s the district court explained, Rule 25(c) applies only to transfers of interest occurring during the pendency of litigation and not to those occurring before the litigation begins."). Nor did DA, LLC need to file a motion to intervene, as it was already taking part in the case, albeit under a misnomer. *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 WL 833595, at *4 (N.D. Tex. 2004) ("Regardless of whether a party is ever formally named, it may become a party by participating in the proceedings.").

On October 13, 2021, DA, LLC filed a motion for leave to further amend its counterclaim. ECF No. 84. Both the proposed and filed Second Amended Counterclaim alleged "Counterclaim Plaintiff, Dining Alliance, LLC, formerly known as Dining Alliance, Inc. ('DA'), is a Massachusetts limited liability company with a principal place of business at 307 Waverley Oaks Road, Suite 401, Waltham, MA 02452." ECF No. 84-1, ¶ 1; ECF No. 90, ¶ 1.

On November 5, 2021, when Attorney Greene sought *pro hac vice* admission, he represented that he had been retained by "Dining Alliance, LLC." ECF No. 125.

### C. The DA Attorneys Did Not "Obstruct" Foodbuy's Efforts to Take Jurisdictional Discovery.

Foodbuy's filings create the impression the DA Attorneys engaged in an effort to mislead, confuse, or interfere with the exchange of information relating to jurisdiction. That is false. As outlined below, at no time until late November 2021 was DA aware Foodbuy was raising an issue regarding jurisdiction and, immediately upon learning of the relevancy of the information, took extraordinary efforts at a time the parties were engaged in daily depositions and responding to dispositive motions to dismiss and for summary judgment. The DA Attorneys acted with candor, honesty and good faith intentions at all times.

On June 15, 2021, Foodbuy served DA, LLC with requests for production ("Foodbuy RFPs"). The Foodbuy RFPs included requests for:

> any and all documentation showing the state of residence and principal place of business for (a) DA; and (b) all members of DA as a Limited Liability Company. If any member is an individual, please list that individual with documentation showing his/her state of residence.

On July 26, 2021, DA, LLC served responses and objections to the Foodbuy RFPs, in which they objected to the aforementioned request, stating:

> Dining Alliance objects to this Request on the grounds that it is overbroad, unduly burdensome, disproportional to the needs of the case, and seeks information that is

6

confidential and neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

App. 0067.

DA, LLC's objections were well-founded. The request as phrased would have captured every document that contained DA, LLC's address. Foodbuy had not at that time, nor ever since, served any interrogatories asking DA or Buyers Edge to identify their members, or their members' place of residency or citizenship.

At the deposition of Joseph C. Corrigan, Esq., DA, LLC's Rule 30(b)(6) designee, on September 28, 2021, BEK's counsel asked Mr. Corrigan about the owners of both DA, LLC and Buyers Edge.

> Q (By Mr. Taylor) Okay. So Buyers Edge is parent company to Dining Alliance; is that correct?
> A Correct.
> Q Okay. Does it -- is it the sole owner of Dining Alliance?
> A It is.
>
> \*\*\*
>
> Okay. And if you know, who are the -- who owns Buyers Edge?
> A Who are the individual owners or shareholders of Buyers Edge Platform?
> Q Correct.
> A There are a series of holding companies, approximately four or five, some of which have shareholders that are individuals and others have shareholders that are -- are private equity partners.
>
> \*\*\*
>
> Q. The -- you had mentioned four or five holding companies own Buyers Edge. Do you know the names of those?
> A Yeah, I know at least three or four of them. There is the Dining Alliance hold co., a BEP hold co., a CC hold co., and a hold co. called Arugula.

App. 0082.

Likewise, during the deposition of Tina Davie Donahue, President of Buyers Edge and a Rule 30(b)(6) designee of DA, LLC, Ms. Donahue identified Buyers Edge as the owner of DA,

7

LLC and Bregal Sagemount as having an ownership interest in DA, LLC. App. 0086-87. DA, LLC's witnesses never refused to answer any questions by Foodbuy's counsel during any deposition regarding DA, LLC's or Buyers Edge's members or such members' residency or citizenship.

On November 15, 2021, five months after serving the Foodbuy RFPs, Foodbuy raised for the first time DA, LLC's objections to the Foodbuy RFPs, and requested a meet and confer. On November 17, 2021, counsel for the DA Parties and Foodbuy held a meet and confer. App. 49, Declaration of Benjamin M. Greene ("Greene Dec.), ¶ 7. Counsel for the DA Parties stated DA, LLC objected to the residency RFP because as written it would encompass every document that contained DA, LLC's address. App. 0049-50, Greene Dec. ¶ 11. Nevertheless, counsel for the DA Parties agreed to consider producing documents sufficient to show the residency of DA, LLC, Buyers Edge, and their members. *Id.* Counsel for Foodbuy requested that, in addition to what was requested in the Foodbuy RFPs, DA, LLC and/or Buyers Edge also produce documentation for the members of any LLC that was a member of DA, LLC or Buyers Edge, a supplemental request that went beyond the request contained in the Foodbuy RFPs. App. 0049, Greene Dec. ¶ 10. Counsel for Foodbuy never raised any concerns about a lack of diversity or subject matter jurisdiction at any point during that meet and confer. *Id.* at ¶ 9.

Later that day, counsel for Foodbuy circulated an email purporting to summarize the meet and confer. App. 0054-55. In a November 19, 2021 follow up email, the DA Parties's counsel stated "I will respond in greater detail later. As to the residency questions – we will agree to produce documents sufficient to show the place of incorporation and primary headquarters for Dining Alliance, Buyers Edge and Consolidated Concepts – we will not be providing residency information about any of the entities owners, managers or members, as such information does not

8

have any jurisdictional relevance." App. 0053-54. The response was inartfully written (i.e. "place of incorporation" should have referred to "place of organization"), however, the purpose of the email was to provide a brief response, and that a response in greater detail would be forth coming. App. 0050, Greene Dec. ¶ 13.

On Monday, November 22, 2021, Foodbuy's counsel responded, stating for the first time it believed it needed the information to determine diversity jurisdiction, and attaching a decision issued by this Court to support its position. App. 0053. Foodbuy's counsel then conveyed that, if the DA Parties' counsel could not provide support for their position by the end of the day it expected DA, LLC and Buyers Edge "to produce the documents immediately." *Id.*

The DA Attorneys promptly reviewed the case provided by Foodbuy, conducted research related to Foodbuy's position, and conferred with their client immediately after the Thanksgiving holiday. App. 0050-51, Greene Dec. ¶¶ 16-17. Accordingly, on November 29, 2021, the DA Parties' counsel sent an additional follow up email which stated "Our client is considering the request and we will let you know as soon as possible if Dining Alliance will be providing responsive documents." App. 0058-59. Later that day, without any further discussion or conference, Foodbuy filed its Motion to Dismiss for Lack of Jurisdiction, in which it incorrectly accused the DA Parties and the DA Attorneys of obstructing jurisdictional discovery. ECF No. 146.

On December 1, 2021, this Court issued an Order requiring the parties to submit documentation establishing their citizenship. On December 3, 2021, the DA Parties' counsel sent an additional follow up email to Foodbuy, stating "To supplement our prior response. We will produce citizenship documentation for DA and BEP consistent with the Court's order on

December 1, 2021 (Doc. 151) requiring each party to file documentation establishing citizenship for diversity purposes." App. 0058.

### D. The DA Attorneys Worked With the DA Parties and Bregal Investments to Ascertain the DA Parties' Citizenship In Compliance with the Court's Orders.

After Foodbuy filed a motion to dismiss for lack of subject-matter jurisdiction and the Court ordered each of the parties to file documents establishing their citizenship, the DA Attorneys conducted research of public records and worked with the DA Parties' in-house counsel, Joseph W. Corrigan, Esq., to investigate the citizenship of the members of the DA Parties. App. 0004-05, Littman Dec. ¶16. On December 15, 2021, the DA Parties submitted a statement of citizenship. EFC No. 181. Partnerships affiliated with Bregal Sagemount, a private equity firm, were investors in and members of Buyers Edge. However, Attorney Corrigan did not have knowledge of the identities or citizenship of the limited partners of the partnerships affiliated with Bregal Sagemount that were members of Buyers Edge. *Id.* at ¶ 16. At the time, the DA Parties provided all the information it then had about the citizenship of the Bregal Sagemount entities. *Id.* The DA Attorneys did not seek to hide any information from the Court or the other parties, and would never consider doing so. *Id.* at ¶¶ 16-18.

After the Court ordered the DA Parties to file an amended response on December 16, 2021, the DA Attorneys worked with Attorney Corrigan and in-house counsel for Bregal Investments[3] to obtain as much information as possible regarding the identities and citizenship of the corporation and limited partnership members of Buyers Edge (the sole member of DA, LLC and CC) as well as the tiers of partners under the umbrella of the limited partnership members. App. 0005, Littman Dec. ¶¶ 17-18.

---

[3] Bregal Investments is an international private equity firm that advises several funds, including Bregal Sagemount, which invested in Buyers Edge in 2019. ECF No. 195-2, ¶¶ 1-2.

Prior to December 16, 2021, when the Court ordered the DA Parties to file an amended response, the DA Parties did not know the identity or citizenship of any of the limited partners in the Bregal Sagemount limited partnerships that were members of the upstream LLCs. App. 0004-05, Littman Dec. ¶ 16. Nor prior to December 16, 2021, did the DA Parties possess any information that would have led it to believe any individual in Texas had any ownership interest in Buyers Edge. *Id.*

As set forth in the DA Parties' Response to the Court's December 27, 2021 Order, the DA Parties' amended citizenship filing provided all of the partnership and citizenship information Bregal Investments' counsel was able to ascertain after good faith, reasonable, and diligent inquiries. ECF No. 202, at 3. The DA Parties and the DA Attorneys engaged in good faith, diligent, and reasonable efforts to comply with the Court's orders of December 1, 2021 and December 16, 2021. To the extent the DA Parties were unable to identify the citizenship of all of the partners of the limited partnership members of Buyers Edge, it was due to circumstances outside of the DA Parties' and Bregal Investments' control. *Id.*, at 5. They provided all of the information known, available, and within their control regarding the citizenship of their members and the various partnerships and funds under the umbrella of the limited partnership members of Buyers Edge.

In addition, the DA Attorneys obtained a supplemental declaration from in-house counsel for Bregal Investments after BEK submitted a filing questioning whether the DA Parties' Texas citizenship existed at the time the action was filed. App. 0005, Littman Dec. ¶ 18. The supplemental declaration, attached as <u>Exhibit A</u> to the DA Parties' submission in response to the Court's January 3, 2022 Order, confirms that the Texas-based individual who is a partner in one

11

of the relevant Bregal Sagemount partnerships has held that interest since before the time of filing of this case. *Id.*

### E. The DA Attorneys' Conduct Does Not Warrant Revocation Of Their Pro Hac Vice Admissions or the Striking of the DA Parties' Pleadings.

"Once a district court has admitted an attorney to practice before it *pro hac vice*, it may revoke that attorney's admission if, after following the proper disciplinary procedure, it concludes that the attorney violated a clearly identifiable ethical rule." *U.S. v. Nolen*, 472 F.3d 362, 374–75 (5th Cir. 2006); *see Belue v. Leventhal*, 640 F.3d 567, 577 (4th Cir. 2011) (holding revocation of *pro hac vice* status requires "some modicum of due process"). "The revocation of *pro hac vice* status" is a "loss of the right to practice law." *In re Silverman*, 855 Fed. Appx. 912, 915 (5th Cir. 2021). Such revocation is a serious sanction that can have a substantial impact on an attorney's reputation and ability to practice. *Johnson v. Trueblood*, 629 F.2d 302, 303 (3d Cir. 1980) (due process ensures "attorney's reputation and livelihood are not unnecessarily damaged, protects the client's interest, and promotes more of an appearance of regularity in the court's processes."). "Because attorney suspension is a quasi-criminal punishment in character, any disciplinary rules used to impose this sanction on attorneys must be strictly construed resolving ambiguities in favor of the person charged." *U.S. v. Brown*, 72 F.3d 25, 29 (5th Cir. 1995); *see U.S. v. Collins*, 920 F.2d 619, 626 (10th Cir. 1990) ("Once admitted, *pro hac vice* counsel cannot be disqualified under standards and procedures any different or more stringent than those imposed upon regular members of the district court bar.").

"When acting under an inherent power to disbar an attorney, a district court must make a specific finding that an attorney's conduct 'constituted or was tantamount to bad faith.'" *In re Sealed Appellant*, *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)); *Trade Well Intern. v. United Cent. Bank*, 778

12

F.3d 620, 627 (7th Cir. 2015) ("[S]anctions under the court's inherent power should not be imposed unless there is bad-faith conduct or willful disobedience of an order").

Examples of bad faith include providing false or deliberately misleading testimony under oath, falsifying documents, or failing to disclose past ethical violations in an application for *pro hac vice* admission. *See In re Sealed Appellant*, 194 F.3d at 671-72; *U.S. v. Howell*, 936 F. Supp. 774, 776 (D. Kan. 1996); *Ryan v. Astra Tech, Inc.*, 772 F.3d 50, 61-62 (1st Cir. 2014) (upholding revocation of *pro hac vice* admission where attorney (1) attempted to communicate with client during deposition via a note pad and (2) denied before Court that he had done so, despite court reporter testimony to the contrary; and (3) misrepresented the events that transpired during the deposition to the Court); *Brooks v. Motsenbocker Advanced Developments, Inc.*, C.A. No. 07CV0773-MMA (NLS), 2009 WL 10671895, at *2 (S.D. Cal. Mar. 2, 2009) (upholding magistrate judge's revocation of *pro hac vice* admission where revocation was predicated on "instances in which [revoked attorney] had misrepresented the parties' and the Court's actions, engaged in excessive and abusive motion practice, and insulted the intelligence of the Court . . . [and where revoked attorney had] previously been admonished against misrepresenting the parties' or the Court's actions"); *Atlas Trading Conglomerate Inc. v. AT&T Inc.*, C.A. No. 3:15-cv-0404-K, 2018 WL 1122158, at *3 (N.D. Tex. Feb. 28, 2018) (finding that lead counsel had worked with client's senior management to purposefully avoid and violate prior court order, holding lead counsel in contempt, and revoking *pro hac vice* admission).

"Negligence, however, is not enough to support a finding of bad faith." *Trade Well Intern*, 778 F.3d at 627; *See Stolfat v. Equifax Information Services, LLC*, C.A. No. 19-80428-CV, 2019 WL 2708855, at *1-2 (S.D. Fla. June 25, 2019) (finding, following issuance of order to show cause why sanctions should not issue following "frivolous, misleading, or improper" filing, that while

13

statements in filing were legally incorrect, attorney did not submit materials in bad faith, apologized to the court, and satisfied the court that subsequent filings would be better-researched).

Here, none of the DA Attorneys intentionally misled the Court or the opposing parties or engaged in any bad faith or unethical conduct. The mistakes made in DA, LLC's initial filings were unintentional and were the result of the DA Attorneys not being aware of the conversion of DA, Inc. to DA, LLC. Indeed, once the misnomer was identified, the DA Attorneys actively took steps to correct the mistake and bring the correct name of the entity to the other parties' attention. By at least April of 2021, when BEK and DA filed a joint unopposed motion addressing the misnomer, the DA Attorneys believed, in good faith, that both BEK and Foodbuy were fully aware that DA, Inc. had been incorrectly named and that DA, LLC was the only Dining Alliance entity participating in the litigation.

Likewise, the DA Attorneys did not intentionally obstruct the discovery of documents or information that would have revealed diversity did not exist between DA and BEK. Indeed, it was not clear until Foodbuy's attorney provided case law precisely what Foodbuy was seeking through the discovery. Once it became clear, immediately before Thanksgiving, what the issue was Foodbuy wanted to present, the DA Attorneys presented the issue to their client and began promptly to assemble the available information. The most critical information, it turned out, was not in the possession of any of the DA Parties. Rather, an individual member of one of the partnerships of a private equity fund that had invested in the parent entity for DA LLC was a resident of Texas. The private equity fund was in possession of that information, although even it had some difficulty quickly identifying the relevant information. Accordingly, at no point prior to the investigation conducted by in-house counsel for Bregal Investments did the DA Parties or the

14

DA Attorneys have any knowledge, information, or documents that would have led it to know or suspect that anyone in Texas had an ownership interest in any of the DA Parties.

## CONCLUSION

Wherefore, for the reasons stated above, the DA Parties and their counsel respectfully request this Court find there exists no cause to revoke the *pro hac vice* admissions of the DA Parties' counsel or the striking of the DA Parties' pleadings.

Respectfully Submitted,

*/s/ Rachel Ziolkowski Ullrich*
Rachel Ziolkowski Ullrich
Texas Bar No. 24003234
rullrich@fordharrison.com

**FORDHARRISON LLP**
1601 Elm Street, Suite 4450
Dallas, Texas 75201
Telephone: (214) 256-4700
Facsimile: (214) 256-4701

-and-

Joseph P. Crimmins, BBO # 556582
Joseph.crimmins@arentfox.com
Adam L. Littman, BBO # 673407
Adam.littman@arentfox.com
Benjamin M. Greene, BBO # 696850
Benjamin.greene@arentfox.com

**ARENT FOX LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Telephone: (617) 973-6100
(admitted *pro hac vice*)

**ATTORNEYS FOR
DINING ALLIANCE, LLC, BUYERS
EDGE PLATFORM, LLC, and
CONSOLIDATED CONCEPTS, LLC**

15

## **CERTIFICATE OF SERVICE**

    I, Rachel Ziolkowski Ullrich, Esq., hereby certify that on this 7th day of January 2022, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

                                                         */s/ Rachel Ziolkowski Ullrich*
                                                         Rachel Ziolkowski Ullrich