**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **BEN E. KEITH, CO. d/b/a/** | § | |
| **BEN E. KEITH FOODS,** | § | |
| | § | |
| *Plaintiff/Counterclaim Defendant* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-00133-A** |
| | § | |
| **DINING ALLIANCE, LLC,** | § | |
| **BUYERS EDGE PLATFORM, LLC, and** | § | |
| **CONSOLIDATED CONCEPTS, LLC,** | § | |
| | § | |
| *Defendants/Counterclaim Plaintiff/* | § | |
| *Counterclaim Defendant* | § | |
| **v.** | § | |
| | § | |
| **FOODBUY, LLC,** | § | |
| | § | |
| *Counterclaim Plaintiff/* | § | |
| *Counterclaim Defendant* | § | |

**FOODBUY, LLC'S REPLY BRIEF SUPPORTING ITS**
**MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)**

**TO THE HONORABLE JOHN H. MCBRYDE, UNITED STATES DISTRICT JUDGE**
**FOR THE NORTHERN DISTRICT OF TEXAS:**

Counterclaim Defendant Foodbuy, LLC ("Foodbuy") respectfully files this Reply Brief

Supporting its Motion to Dismiss Under FED. R. CIV. P. 12(b)(1) and would show as follows:

## I.   INTRODUCTION

Dining Alliance, LLC ("DA") suggests that Foodbuy filed this Motion to Dismiss for Lack of

Subject Matter Jurisdiction because *Foodbuy* is "[f]aced with an impending trial."[1] Not True. After

a year embroiled in litigation involving extensive written discovery, more than twenty depositions,

briefing on multiple dispositive motions, and preparations for a trial scheduled to begin in exactly

---

[1] Dining Alliance, LLC's Opposition to Foodbuy, LLC's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) ("Opp.")
(ECF No. 186) at 1.

one month, Foodbuy would certainly prefer a decision on the merits. It is DA who, faced with an impending trial, is now asking the Court to dismiss its claims against Foodbuy *without prejudice*, presumably so that DA can re-file its claims in state court and the parties can start all over again.[2]

DA also suggests that Foodbuy's conduct in this litigation has "wasted (and will continue to waste) precious court resources."[3] Again, not true. DA single-handedly caused the jurisdictional mess in which the Court now finds itself, and DA alone could have prevented it by (i) disclosing, upon answering the lawsuit in the spring of 2020, that it had converted to an LLC rather than referring to itself as Dining Alliance, Inc. and to the LLC entity as an "interested third party;" (ii) diligently investigating its true citizenship at that time and promptly advising the Court and parties that the Court had no diversity jurisdiction; (iii) providing its citizenship information in response to Foodbuy's discovery requests rather than obstructing Foodbuy's efforts to obtain that information on the grounds that such information does "not have any jurisdictional relevance";[4] or (iv) complying with the Court's first, second, or third Order requiring it to disclose its citizenship information. Instead, DA thwarted Foodbuy's, and this Court's, efforts to determine whether subject-matter jurisdiction exists at every turn and changed its position multiple times in response to newly uncovered facts that DA should have disclosed at the outset of this litigation.[5] DA's

---

[2] Dining Alliance, LLC's Submission in Response to the Court's January 3, 2022 Order (ECF No. 228 at 12.).

[3] Opp. (ECF No. 186) at 1.

[4] DA claims that this e-mail was "inartfully written" and that DA was still considering DA's request at the time Foodbuy filed its Motion to Dismiss for Lack of Subject-Matter Jurisdiction. (ECF No. 229 at 9.) DA did not agree to provide the information, though, until after this Court's December 1, 2021 Order requiring it to do so. DA objected to Foodbuy's request for production as overbroad, but was nonetheless required to provide responsive information sufficient to satisfy the non-objectionable portion of the request such as providing sufficient documents rather than "any and all" documents evidencing citizenship of all DA members. (ECF 229, at 6-7; *contra* FED. R. CIV. P. 34(b)(2)(C)).

[5] DA made additional misrepresentations to the Court regarding the appropriateness of joining breach of contract claims against Foodbuy. (*See* ECF No. 35, at 5) (DA misrepresenting joinder of breach of contract claim against Foodbuy would be proper under FED. R. CIV. P. 20) (*accord.* ECF No. 61, at 5. n.2); *but see* FED. R. CIV. P. 20 (counterclaim defendants may be joined where "any right to relief is asserted against them jointly, severally, or in the alternative") (*contra.* ECF No. 231, at 15) ("DA does not, and did not, seek to hold Foodbuy and BEK jointly and severally liable for their respective breaches of their agreements with DA. Rather, DA asserted an independent claim against Foodbuy for breach of contract (distinct from the now dismissed breach of contract claim against BEK.")).

misconduct and flip-flopping positions have made it impossible to confidently answer a fundamental and essential question: Does the court have subject-matter jurisdiction. DA's more recent flip-flops can be chronicled as follows:

Dec. 15, 2021:    "As will be explained more fully in DA's oppositions to the motion to dismiss for lack of subject-matter jurisdiction . . . the Court has jurisdiction over the original action between BEK, on the one hand, and DA, on the other hand, *as there is complete diversity among the parties* and BEK asserts causes of action under Federal law.[6]

Dec. 20, 2021:    DA maintains that "[n]o party disputes that this Court has subject-matter jurisdiction to adjudicate BEK's original claims against DA . . . as well as DA's counterclaims against BEK," and that, therefore, this Court can properly adjudicate . . . DA's claims against Foodbuy, which arise out of a common nucleus of operative fact and form part of the same case or controversy as the claims in the original action between DA and BEK."[7]

Dec. 23, 2021:    After disclosing (for the first time) that there may have never been diversity of citizenship between the parties, DA says it does "*not contend the Court has diversity jurisdiction* over this case" but that "the unascertained citizenship of the parties of the partners . . . is not material to the Court's determination of the existence of subject-matter jurisdiction" because the Court still had federal-question on which it could base supplemental jurisdiction.[8]

Jan. 7, 2021:    DA declares that while the Court "may still exercise discretion to retain jurisdiction to adjudicate the DA Parties' counterclaims against Foodbuy, [] the weight of authority in the Fifth Circuit favors a dismissal of these claims without prejudice to refiling them in state

---

DA similarly does not seek to hold Foodbuy alternatively liable as to DA's separate contract with BEK. This provides the Court with additional grounds for dismissing DA's claims with prejudice as a sanction. *See* FED. R. CIV. P. 41(b) (authorizing dismissal on the merits for failure to comply with court orders or Federal Rules of Civil Procedure); *see also Abdullah v. Acands, Inc*., 30 F.3d 264, 268-69 (1st Cir. 1994) (upholding trial court's dismissal with prejudice as "sanctions for failure to comply with a court order or the Federal Rules" based on, among other things, misjoinder of a defendant under Rule 20).

[6] Statement of Citizenship of Dining Alliance, LLC, Buyers Edge Platform, LLC, and Consolidated Concepts, LLC (ECF No. 181) at 3 (emphasis added).

[7] Opp. (ECF No. 186) at 5-6. In fact, when BEK first filed suit against DA, it did so based solely on diversity jurisdiction, and, the question of whether the Court ever had subject-matter jurisdiction is far from clear. (*See* ECF No. 203 and ECF No. 227.)

[8] Dining Alliance, LLC, Buyers Edge Platform, LLC and Consolidated Concepts, LLC's Response to the Court's December 27, 2021 Orders Regarding Their Compliance with the Court's Citizenship Orders (ECF No. 202) at 6 (emphasis added).

court."[9]

Subject-matter jurisdiction should not be "in doubt" almost two years into this case. Only DA knows the identity of its members, and only DA could have avoided the "waste" of "precious court resources" that DA ironically accuses Foodbuy of wasting.

Be that as it may, the issue is now squarely before the Court one month before trial: Does this Court have subject-matter jurisdiction over DA's claims against Foodbuy. Unfortunately, as discussed below, the answer is likely "no." The second question is what the Court should do in these unusual circumstances. DA would like the Court to dismiss its claims against Foodbuy *without prejudice* so that it can re-file them in state court. But DA should not be rewarded with a second chance when it is the party that elected to bring Foodbuy into this lawsuit and obfuscated the jurisdictional issue now before the Court for over a year.[10] Instead, DA's claims against Foodbuy should be dismissed for lack of subject-matter jurisdiction *with prejudice* as a sanction for DA's misconduct.

## II.    ARGUMENTS AND AUTHORITIES[11]

### A.  The Court Lacks Subject-Matter Jurisdiction Over Dining Alliance's Claims Against Foodbuy.[12]

---

[9] Dining Alliance, LLC's Submission in Response to the Court's January 3, 2022 Order (*See* ECF No. 228) at 12.

[10] DA attempts to shift some fault for its non-compliance with the Court's jurisdictional orders to the fact that DA could not ascertain the citizenship of the "Bregal" entities. However, that same excuse does not apply to the issue of complete diversity between DA, Foodbuy, and UAG, since complete diversity does not exist between DA and Foodbuy regardless of the citizenship of the "Bregal" entities because both LLCs have members who are Delaware corporations.

[11] As it relates to DA's standing to bring suit, Foodbuy relies on its original briefing on the matter. Indeed, the issue is clear and inescapable that ***DA does not receive any rebate revenues generated by Entegra or Buyers Edge Opco***. ***All those revenues are paid to Buyers Edge Opco***, a non-party, who then determines what expenses should be paid using those funds and, ultimately, what the resulting profits are. (ECF No.145, at 9). DA therefore could not have sustained any injury by losing profits it otherwise never received. Although DA states that it is a contracting party with Entegra, (ECF No. 186, at 8), DA refuses to provide that contract to any party.

[12] After Foodbuy filed its motion to dismiss for lack of subject-matter jurisdiction, the Court dismissed *with prejudice* the counterclaims Buyers Edge Platform, LLC ("Buyers Edge") asserted against Foodbuy for failure to state a claim upon which relief could be granted. (ECF No. 177.) Accordingly, this Reply Brief refers only to DA's counterclaims, although the same arguments would have applied equally to Buyers Edge's counterclaims.

While DA now maintains that the Court should not exercise supplemental jurisdiction, DA argues in its Opposition that "this Court has supplemental jurisdiction to adjudicate DA's counterclaims notwithstanding [the] lack of diversity between DA and Foodbuy" because DA's claims against Foodbuy "arise out of a common nucleus of operative fact and form part of the same case or controversy as the claims in the original action between DA and BEK."[13] Unfortunately, Foodbuy believes DA is incorrect.[14]

As an initial matter, it is undisputed that the Court did not have original subject-matter jurisdiction over this action when it was filed because BEK's Original Complaint did not assert any federal claims and there was no diversity of citizenship. As discussed in its previous submissions, Foodbuy does not believe an amended pleading (like BEK's First Amended Complaint) can "cure" a lack of subject-matter jurisdiction over the original action.[15] DA argues to the contrary, and this issue has now been fully briefed and is before the Court.[16] If the Court determines that Foodbuy's position is correct (i.e., that BEK did not "cure" the jurisdictional defect in this action through its First Amended Complaint asserting federal claims), then there is no basis for the Court to exercise jurisdiction, supplemental or otherwise, over DA's claims against Foodbuy.

Moreover, even if the Court finds that BEK's First Amended Complaint did "cure" the jurisdictional defect vis-a-vi BEK and DA, that does not necessarily mean that the Court can

---

[13] Opp. (ECF No. 186) at 3-6.

[14] If the Court disagrees and finds it does have supplemental jurisdiction, Foodbuy submits that the Court should not dismiss DA's claims *without prejudice* as DA suggests, but should instead exercise its discretion to retain jurisdiction based on the "common law factors of judicial economy, convenience, fairness, and comity" *See Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11–CV–388–A, 2013 WL 646383, at *4 (N.D. Tex. Feb. 21, 2014) (McBryde, J.) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods.*, 554 F.3d 595, 602–03 (5th Cir. 2009)) (finding that procedural facts near identical to those in the instant case required the Court to exercise supplemental jurisdiction).

[15] ECF No. 203 at 11-15; ECF No. 227 at 6-8.

[16] Foodbuy's position on this issue is set forth in its Submission in Response to the Court's January 3, 2022 Order. (ECF No. 227 at 7-8.).

exercise supplemental jurisdiction over the counterclaims DA asserted against Foodbuy. 28 U.S.C. § 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related *to claims in the action within such original jurisdiction* that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (emphasis added); *see also, Lewis v. Moore*, 3:09 -CV-1720-K, 2011 WL 1119757, at *2 (N.D. Tex. Mar. 24, 2011) (Kinkeade, J.) ("federal courts may exercise jurisdiction over state law claims if they arise from the same 'common nucleus of operative fact' *as claims over which the federal court has original jurisdiction*) (emphasis added) (citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)). In other words, DA's claims against Foodbuy must arise from the same nucleus of operative facts as BEK's *federal law claims against DA* (i.e., the claims over which the Court theoretically would have original jurisdiction) in order for the Court to exercise supplemental jurisdiction over DA's claims against Foodbuy.

DA has not attempted to show any "logical relationship" between *BEK's federal claims against DA*, on the one hand, and *DA's state-law claims against Foodbuy*, on the other. Rather, DA argues that (i) BEK's federal claims against DA are based on the "same operative facts" as BEK's state-law claims against DA; (ii) DA's state-law counterclaims against BEK are "logically related" to BEK's claims against DA; and (iii) DA's state-law claims against BEK "arise out of the same core operative facts as DA's [state-law] counterclaims against Foodbuy."[17] This convoluted attempt to stretch supplemental jurisdiction over DA's state-law claims against Foodbuy does not satisfy the requirements of 28 U.S.C. § 1367(a) and should be seen for what it is: an attempt to save face.

Undertaking the proper analysis leads to the conclusion that BEK's federal claims against DA and DA's claims against Foodbuy do not arise from a common nucleus of operative facts.[18] In

---

[17] ECF No. 228 at 8-10.
[18] *See* ECF No. 42 at, ¶¶ 16, 25-33, 35, 49-53, 68-69, 70-72.

particular, BEK based its federal claims against DA on DA's alleged unauthorized access into BEK's proprietary "Entrée System" to secure BEK customer information in violation of federal law.[19] BEK never referenced Foodbuy when asserting those claims. DA's claims against Foodbuy, on the other hand, are based on Foodbuy's alleged failure to provide proper notice of Termination Letters for BEK customers who left DA to join UAG, a competing GPO, in violation of a contract between DA and Foodbuy (to which BEK is not even a party), and have nothing to do with BEK's "Entrée System."[20] The only remotely common fact DA points to is in Paragraph No. 38 of BEK's First Amended Complaint, where BEK alleges that DA breached its settlement agreement with BEK by "refusing to acknowledge Foodbuy's provision of LOTs."[21] This allegation, however, relates only to BEK's state-law claim against DA for breach of contract, not its federal claims, and therefore cannot be considered in the "common nucleus" analysis. While Foodbuy would prefer that this were not the case, DA's claims against Foodbuy simply do not arise out of the same operative facts as BEK's federal claims against DA. As such, unfortunately, Foodbuy does not believe the Court has the discretion to exercise supplemental jurisdiction over DA's unrelated claims against Foodbuy.[22]

### B.  The Court Should Dismiss DA's Claims Against Foodbuy *With Prejudice.*

Although DA's Opposition argues that the Court has the discretion to exercise supplemental jurisdiction over its claims against Foodbuy, DA's subsequent filing on January 7, 2022 makes clear that DA has changed its mind and no longer wants the Court to do so. Instead, DA suggests

---

[19] *Id.*

[20] DA suggests for the first time in its Jan. 7, 2022 Submission that it attempted to access BEK's "Entrée system" in response to Foodbuy's conduct (ECF No. 228 at 9), but DA does not cite to, and Foodbuy cannot locate, any such allegation in DA's pleadings.

[21] *See* ECF No. 42 at, ¶ 38.

[22] As stated above, if the Court disagrees with Foodbuy's position, Foodbuy submits that the Court should exercise its discretion to retain jurisdiction given that this action has been pending for over a year, discovery has been completed, summary judgment has been fully briefed, and trial is scheduled to begin in exactly one month. *See Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11–CV–388–A, 2013 WL 646383, at *4 (N.D. Tex. Feb. 21, 2014) (McBryde, J.) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods.*, 554 F.3d 595, 602–03 (5th Cir. 2009)) (finding that procedural facts near identical to those in the instant case required the Court to exercise supplemental jurisdiction).

(for the first time) that the Court's subject-matter jurisdiction is "in doubt" as a result of its settlement with BEK and that "the weight of authority in the Fifth Circuit favors a dismissal of [its] claims without prejudice to refiling them in state court."[23]

DA correctly states that "in the *usual* case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 586-87 (5th Cir. 1992) (emphasis added). DA also correctly states that "[d]ismissals because of absence of federal jurisdiction are *ordinarily* without prejudice." *See, e.g., El v. AmeriCredit Fin. Services, Inc.*, 710 F.3d 748, 751 (7th Cir. 2013). This case, however, is far from "usual" or "ordinary." Over the course of the last year, DA has (i) obfuscated its identity by interchangeably referring to itself as DA, Inc. and DA, LLC, (ii) objected to Foodbuy's requests to discover information that would have revealed the jurisdictional defects that the Court and parties are now grappling with, and (iii) failed to comply with three separate Orders demanding that it provide the Court with its citizenship information. And these issues are culminating exactly one month before this case is scheduled to go to trial. Under these circumstances, it would be entirely inequitable to give DA exactly what it wants: a second bite at the apple and a start from scratch in state court.

In *El v. AmeriCredit Fin. Services, Inc.*, the Seventh Circuit Court of Appeals noted that while dismissals for lack of subject-matter jurisdiction should *ordinarily* be without prejudice, "in rare circumstances, a district court may use its inherent power to dismiss with prejudice (as a sanction for misconduct) even a case over which it lacks jurisdiction." *El v. AmeriCredit Fin. Services, Inc.*, 710 F.3d 748, 751 (7th Cir. 2013) (quoting *Caribbean Broadcasting System, Ltd. v. Cable &*

---

[23] ECF No. 228 at 12.

*Wireless P.L.C.,* 148 F.3d 1080, 1091 (D.C.Cir.1998).) This case presents those "rare circumstances." DA should not be rewarded, and Foodbuy should not be forced to defend itself a second time, as a result of DA's litigation misconduct.[24]

### III.  CONCLUSION AND PRAYER

For the reasons stated above, in its opening brief, and in its other submissions to the Court on this issue, Foodbuy respectfully requests that the Court determine that it has no subject-matter jurisdiction to adjudicate DA's claims against Foodbuy, and that it dismiss those claims *with prejudice* as a sanction for DA's litigation misconduct.

---

[24] In addition, as set forth in Foodbuy, LLC's Submission in Response to the Court's Order No. 197, Foodbuy also believes it would be appropriate to require DA to reimburse Foodbuy for all, or a significant portion of, the attorneys' fees and expenses Foodbuy has been forced to incur defending itself in this action. (ECF No. 203 at 14-15.)

Dated: January 14, 2022

Respectfully submitted,

By: _____

**WILLIAM S. SNYDER**
Texas Bar No. 00786250
wsnyder@bradley.com
**STACY D. SIMON**
Texas Bar No. 00788413
ssimon@bradley.com
**BRIAN M. GILLETT**
Texas Bar No. 24069785
bgillett@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
Fountain Place
1445 Ross Avenue, Suite 3600
Dallas, Texas 75202
(214) 257-9800 (Telephone)
(214) 939-8787 (Facsimile)

**C. BAILEY KING, JR.**
North Carolina Bar No. 34043
*Admitted Pro Hac Vice*
bking@bradley.com

**BRADLEY ARANT BOULT CUMMINGS LLP**
214 N. Tryon Street, Suite 3700
Charlotte, North Carolina 28202
(704) 338-6000 (Telephone)
(704) 332-8858 (Facsimile)

**ATTORNEYS FOR COUNTERCLAIM
DEFENDANT FOODBUY, LLC**

## CERTIFICATE OF SERVICE

On this 14th day of January 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

_____
William S. Snyder

10